George **DOBROWOLSKY**, Appellant,

v.

Joseph A. **CALIFANO**, Jr., Secretary, Health, Education, and Welfare, Appellee.

No. 79–1013.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 4, 1979.

Decided Oct. 3, 1979.

J. Barnard Nobel, Bucks County Legal Aid Society, Langhorne, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Gary Tilles, Asst. U. S. Atty., Stephanie W. Naidoff, Regional Atty., Thomas A. Dougherty, Jr., Asst. Regional Atty., Dept. of Health, Education and Welfare, Philadelphia, Pa., for appellee.

Before ADAMS, HUNTER and HIGGIN-BOTHAM, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

On this appeal, George Dobrowolsky challenges the conclusion of the Department of Health, Education and Welfare (HEW) that he is not disabled within the meaning of 42

U.S.C. § 423(d) (1976).[1] Dobrowolsky's claim for disability benefits was denied by an Administrative Law Judge (ALJ) in an opinion after a hearing at which Dobrowolsky waived his right to counsel. The ruling of the ALJ became the final decision of the Secretary of HEW when it was approved by HEW's Appeals Council on Dobrowolsky's request for review.[2] Dobrowolsky then filed suit in the district court[3] seeking reversal of HEW's decision or a remand to the agency for an additional hearing in order that further evidence could be developed. Both parties moved for summary judgment, and the district court granted judgment in favor of HEW. For the reasons stated below we vacate that judgment, and direct that the case be remanded to the agency for a further hearing.

## I. FACTS

Dobrowolsky is 52 years old and has worked as a meat cutter or as supervisor of a meat department continuously since leaving the Navy in 1946. From 1952 to 1975, his earnings were "covered" by the Social Security Administration's disability insurance program, and his last 15 years of work were for the same employer.

In late 1971, Dobrowolsky was treated by his physician for hypertension and chest pains, and subsequently was hospitalized under a diagnosis of ischemia and coronary insufficiency. Following a fall at his home and an automobile accident in 1974, he was again hospitalized and could not work for several months. After his release from the hospital and until December 1975, Dobrowolsky attempted to work, but could do so only sporadically because of severe headaches and pains in his neck, arms, shoulders, and lower back. All these ailments were confirmed by his physician, who ascertained that he was suffering from degenerative disc disease, lumbosacral strain, cervical strain, sciatic neuritis, and essential hypertension.

No physician testified at the hearing before the ALJ, but two medical reports were introduced: one from Dobrowolsky's personal physician and the other from a physician who made a consultative orthopedic examination upon referral by the agency. Both reports characterized the claimant as "disabled." The consulting physician limited his opinion to stating that Dobrowolsky was "disabled from his previous occupation," while his personal physician concluded more generally that "he is unable to work."

In addition, Dobrowolsky testified at the hearing that he cannot stand for more than an hour or sit for more than one or two hours without pain, that he cannot bend without pain, that he has difficulty climbing stairs, that he suffers sharp pain when lifting his arms, that he can walk without pain only for a few blocks, and that he rarely gets as much as four hours of sleep. Most of Dobrowolsky's testimony of subjective pain was corroborated by the medical reports, and none was contradicted by any medical evidence.

Against this formidable array of evidence as to physical disability, and standing as the sole basis for the ALJ's denial of benefits, is the conclusion expressed by a vocational expert. After attending the hearing and reviewing the medical reports, the vocational expert testified that Dobrowolsky could

---

**1.** Disability is defined by the statute as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1976). It is further limited as follows:

[A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. *Id.* § 423(d)(2)(A).

**2.** *See* 20 C.F.R. § 404.951 (1979).

**3.** Review is obtained as of right under 42 U.S.C. § 405(g) (1976).

perform certain sedentary jobs that exist in large numbers both in the geographic area where claimant resides and in the national economy. Examples of the jobs that the vocational expert said Dobrowolsky could perform were "security guard at a building entrance, attendant at a self-parking lot, bench assembler in electronics, toys, appliances or leather goods, inspector-gauger, food processor in a food processing plant and vegetable preparer in a restaurant."[4]

Although unrepresented at the hearing, Dobrowolsky later obtained an attorney and petitioned the Appeals Council of the Social Security Administration to remand this case to the ALJ for consideration of additional evidence regarding the claimant's condition. On appeal to us from the summary judgment entered against him by the district court, Dobrowolsky asserts that the district court judgment should be reversed as a matter of law, and summary judgment entered in his favor, because the vocational expert's testimony did not constitute substantial evidence so as to rebut the clear medical testimony of his disability. In the alternative, he requests a remand to the agency for a new hearing.

## II. STANDARD FOR JUDICIAL REVIEW

Any findings of fact by the Secretary must be accepted as conclusive by a reviewing court "if supported by substantial evidence." 42 U.S.C. § 405(g) (1976). "Substantial evidence" has been defined to mean " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co.*

*v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

There has been much confusing discussion of burdens of proof in disability proceedings under the Social Security Act. It is settled, however, that the claimant must carry the initial burden of demonstrating by medical evidence that he is unable to return to his former occupation.[5] The burden then devolving on the Secretary as to the existence of substantial gainful employment the claimant could perform has been variously described as a burden of proof,[6] a burden "to go forward and produce substantial evidence,"[7] a burden "to show,"[8] or simply a burden of production, with no ultimate shifting of the burden of proof.[9] As the Court of Appeals for the First Circuit has stated, the nature of these proceedings resists attempts at strict conceptualization, and we eschew such discussion as less than enlightening:

> [The] responsibilities [of the claimant and the Secretary] resist translation into absolutes, especially because social security proceedings are not strictly adversarial. For this reason we see no point in deciding abstractly whether the "burden of proof" at a [disability] proceeding is on the claimant or Secretary. Both have responsibilities. The question in each case is whether the Secretary's decision was supported by substantial evidence . . . . . .

*Miranda v. Secretary of HEW*, 514 F.2d 996, 998 (1st Cir. 1975).

This Court has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an admin-

---

**4.** Decision of the Administrative Law Judge at 4, Administrative Transcript at 18 (May 31, 1977).

**5.** *See, e. g., Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

**6.** *Rossi, supra; Stark v. Weinberger*, 497 F.2d 1092, 1098 (7th Cir. 1974) (Stevens, J.); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975).

**7.** *Lewis v. Weinberger*, 541 F.2d 417, 420 (4th Cir. 1976).

**8.** *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir. 1978); *DePaepe v. Richardson*, 464 F.2d 92, 100–01 (5th Cir. 1972).

**9.** *Hernandez v. Weinberger*, 493 F.2d 1120, 1122–23 (1st Cir. 1974); *see O'Banner v. Secretary of HEW*, 587 F.2d 321, 322 (6th Cir. 1978); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975); *Meneses v. Secretary of HEW*, 143 U.S.App.D.C. 81, 84, 442 F.2d 803, 806 (D.C. Cir. 1971).

istrative record and in explicitly weighing all evidence.[10] We have pointed out that " '[a] hearing on an application for benefits is not an adversary proceeding. The applicant is confronted with no adversary in the usual sense of that term. The Social Security Administration provides an applicant with assistance to prove his claim.' "[11]

The cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed. We declared in *Hess* that "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." 497 F.2d at 840. In a black lung case in which the standard of review is identical to review of disability benefits, we quoted approvingly from a decision of the Fourth Circuit Court of Appeals:

"[U]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "[12]

■ Thus, a reviewing court may remand a case to the Secretary for good cause, "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Saldana v. Weinberger*, 421 F.Supp. 1127, 1131 (E.D.Pa.

1976) (Higginbotham, J.); *see Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975).

## III. LACK OF COUNSEL AND THE AGENCY'S DUTY TO DEVELOP THE RECORD WITH SPECIAL CARE

■ When the claimant has been informed of his right to counsel before an administrative hearing and knowingly waives it, his lack of representation is not, of itself, cause for remand. *See Hess, supra*, 497 F.2d at 840 n.4. Lack of counsel is sufficient cause for remand only if supported by a showing of clear prejudice or unfairness at the administrative hearing. *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969). Our examination of the record in light of the heightened level of care and the responsibility of the ALJ to assume a more active role when the claimant is unrepresented,[13] convinces us that Dobrowolsky was prejudiced by lack of counsel and the passivity of the ALJ as developer of evidence in two critical respects:

First, it may be that, with properly developed evidence, Dobrowolsky comes within one of the per se qualifications for disability under the regulations. "Where an individual's impairment(s) meets the duration requirement and is either listed in Appendix 1 or is determined to be medically the equivalent of the listed impairment, a finding of disability shall be made without consideration of the vocational factors." 20 C.F.R. § 404.1503(d) (1979). Appendix 1 lists, among impairments to the cardiovascular system, "ischemic heart disease" accompanied by "chest pain of cardiac origin" supported by objective evidence from electrocardiograms, exercise testing, or angiographic evidence. Moreover, it states that

---

**10.** *See, e. g., Gachette v. Weinberger*, 551 F.2d 39, 40–41 (3d Cir. 1977) (per curiam); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975); *Hess v. Secretary of HEW*, 497 F.2d 837, 840 (3d Cir. 1974).

**11.** *Hess v. Secretary of HEW*, 497 F.2d at 840 (quoting *Easley v. Finch*, 431 F.2d 1351, 1353 (4th Cir. 1970)); *see Miranda v. Secretary of HEW*, 514 F.2d 996, 998 (1st Cir. 1975).

**12.** *Gober v. Mathews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Secretary of HEW*, 567 F.2d 258, 259 (4th Cir. 1977)).

**13.** *See Gachette v. Weinberger*, 551 F.2d 39, 41 (3d Cir. 1977) (per curiam); *Brittingham v. Weinberger*, 408 F.Supp. 606, 611 (E.D.Pa. 1976).

"[s]o-called 'anginal equivalent' locations manifested by pain in the throat, arms, or hands have the same validity as the chest pain described above." 20 C.F.R. Subpart P, App. 1, at 364. There was evidence at the hearing, and the ALJ states, that Dobrowolsky's "medical history includes a hospitalization in 1971 for ischemia and coronary insufficiency. He still has chest pains at times, but his physician . . . does not classify it as angina. . . ." Administrative Transcript at 17. Dobrowolsky testified that he has "sharp pains" when moving his arms. *Id.* at 45. Arguably, the ALJ should have pursued this possibility by calling for additional evidence, and if counsel had represented Dobrowolsky this possibility undoubtedly would have been pursued.

Second, the transcript reveals a less-than-effective attempt by Dobrowolsky to challenge the conclusion of the vocational expert. The expert was never pressed to explain his conclusions—in response to long hypothetical questions by the ALJ, the medical evidence, and Dobrowolsky's testimony—that Dobrowolsky could perform certain sedentary jobs. Nor is it clear that all of the claimant's ailments were carefully considered in the expert's answers.[14]

An example is Dobrowolsky's inability to sleep, a point raised only indirectly by the claimant in the form of a sarcastic remark.[15] The potential value of probing the expert on the importance of ability to sleep in holding substantial gainful employment is apparent in the district court's opinion in *Nanny v. Mathews*, 423 F.Supp. 548 (E.D. Va.1976).[16] The ability to engage in substantial gainful employment, as indicated in that case, means more than the ability to do certain of the physical and mental acts required in the job; the claimant must be able to sustain the activity through continuous attendance in a regular work-week.

Inasmuch as these important aspects of Dobrowolsky's claim were not adequately considered at the hearing because of "the Administrative Law Judge's narrow view of his role . . ., coupled with [the claimant's] lack of legal counsel at that hear-

14. According to a recent study of disability hearings, this is a common problem. The authors of the study note that a vocational expert will frequently list jobs the claimant assertedly can perform, but

> does not specify what skills he is assuming the claimant has that would permit him to perform the required work. The [vocational expert]'s conclusions as to transferable skills are based upon his examination of the record as to work history and education and the evidence of the claimant's experience and training developed at the hearing. But the [expert]'s reasoning in arriving at these conclusions is often not revealed.

J. Mashaw et al., *Social Security Hearings and Appeals* 77–78 (1978). The authors also believe that the ALJs must question experts more thoroughly because claimants tend, as was true of Dobrowolsky, not to ask any questions of the vocational experts despite the variety of areas in which their testimony might be weak. *See id.* at 86.

15. The Administrative Transcript reveals that the ALJ left the responsibility to cross-examine the vocational expert entirely to Dobrowolsky. When asked to respond to the witness's conclusion that sedentary work such as a security guard was possible, Dobrowolsky stated that he had requested that job but could not do it because it required bending. The colloquy continued with the ALJ questioning Dobrowolsky:

> Q: Well, [the vocational expert] wasn't referring—on a type of security job that he's referring to, you've seen these men that sit at a desk, in front of a building. When people come into a particular building, and you have to identify yourself, and check you out.
> A: Well, if I could sleep on the job, too, I'll try it.
> Q: What do you mean by sleep on the job?
> A: My record says I can't sleep.
> Q: Are there any other questions you want to ask this gentlemen?
> A: No.

Administrative Transcript at 61–62.

16. After mentioning several jobs that the claimant in that case might secure despite restrictions to light activity, the vocational expert in *Nanny* was then asked to consider the claimant's inability to sleep: "On the assumption that in addition to the above restrictions and as a result of her pain and her inability to sleep, the plaintiff would be unable to work on a regular basis, [the vocational expert] indicated [that the claimant] would not be able to perform substantial gainful work as most jobs require fairly regular attendance." 423 F.Supp. at 550.

ing,"[17] this matter should be remanded for such consideration.

## IV. THE SUBSTANTIAL EVIDENCE TEST

In *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), this Court reluctantly affirmed a denial of benefits, but criticized the hearing examiner for submitting a four-page summary of the evidence followed by cursory findings of fact without explicit statements as to "what portions of the evidence he accepted or rejected." *Id.* at 312. We are aware of the large volume of disability cases that the agency must adjudicate.[18] Nevertheless, each case represents a citizen's claim of serious disability, and this factor imposes on the agency and the courts the responsibilities set out in *Baerga:*

> [A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. It is incumbent upon

the examiner to make specific findings—the court may not speculate as to his findings.

*Id.*

Testimony of subjective pain and inability to perform even light work is entitled to great weight, particularly when, as here, it is supported by competent medical evidence. *See Nanny v. Mathews*, 423 F.Supp. 548, 552 (E.D.Va.1976) (citing cases). Moreover, when the claimant has a work record like Dobrowolsky's—twenty-nine years of continuous work, fifteen with the same employer—his testimony as to his capabilities is entitled to substantial credibility.

It was not enough for the ALJ to allow a vocational expert to make conclusory statements as to Dobrowolsky's physical abilities—statements that contained no explanation—and then to point to the vocational expert's conclusory statements as a reason for denying benefits without the ALJ's furnishing any explanation regarding the relative weight and credibility of the evidence before him. Moreover, we are reluctant to regard the vocational expert's testimony as substantial evidence, inasmuch as it is apparent from the record that he was asked to interpret medical evidence and to reach conclusions on the ultimate issue before the agency.[19] Indeed, such an in-

---

**17.** *Saldana v. Weinberger*, 421 F.Supp. 1127, 1131 (E.D.Pa.1976).

**18.** The Social Security Administration received approximately 92,000 requests last year for hearings on disability insurance benefits. *Social Security Adm'n, Dep't HEW, Operational Analysis of the Bureau of Hearings and Appeals*, 26 (Sept. 30, 1978) (OHA Pub. No. 032 (7–79)). On the other hand, the Social Security Administration has 670 administrative law judges, *id.* at 37, more than the number of trial judges in the entire federal system. Last year approximately 8,000 petitions for review from actions on disability claims were brought to the federal district courts, *id.* at 34; this litigation constitutes the largest portion of the workload of the federal judiciary from federal agencies, *id.* at 32.

**19.** The vocational expert was asked if the claimant could return to his previous job, a question that had already been answered in the negative by Dobrowolsky's personal physician

as well as HEW's examining physician. He then testified, consonant with his expertise in analyzing the job market, as to what jobs of a sedentary or light nature were available. Although the ALJ asked the expert to take into consideration Dobrowolsky's age, education, and work experience in considering what jobs were available, there is no evidence that these factors were given the careful consideration they deserve. The ALJ then proceeded to summarize Dobrowolsky's testimony—inaccurately, it is contended—and asked: "I want you to assume that all this testimony is correct. It correctly describes his condition. However, also taking into consideration the medical evidence on record, would he be able to perform any of these light and sedentary jobs that you've mentioned, on a full time and regular basis?" Administrative Transcript at 55–60. This question in effect asked the vocational expert to interpret medical evidence and to make a conclusion on what was, for all practi-

quiry violated HEW's own directives regarding the use of vocational experts. In its notice to prospective vocational expert witnesses, the Social Security Administration states: "You will not be expected to testify as to whether or not the claimant is under a disability, since you do not have the responsibility for deciding this ultimate legal issue. You should not express any opinion regarding the impairments involved and their effect on functional capacity, since these are medical matters."[20] At the hearing, however, the vocational expert was asked to reach conclusions based, *inter alia*, on technical medical evidence about the claimant's physical abilities to perform sedentary or light work.

The ALJ's finding that Dobrowolsky could perform sedentary work, based in turn on the vocational expert's bare conclusions on this ultimate issue, is not founded on substantial evidence and thus may not be affirmed by a reviewing court. As Judge Rubin held in *DeMandre v. Weinberger*, 414 F.Supp. 784, 787 (E.D.La.1976) (emphasis added):

It is not enough for the judge to point vaguely to a narrow area of possible employment and assert that such work is suitable as long as the claimant does not stand, bend, climb any stairs or walk for more than several paces. . . . It must be shown *by competent medical testimony* that the claimant is capable of performing the physical activities that the jobs available to him require.

. . .

It is not necessary to have a degree in vocational counseling to observe that virtually any job, except one designed for a handicapped person, is like to require walking to and from the employee's post, occasional bending, standing while waiting, and possibly some climbing [of] stairs.

Although the claimant has vigorously urged that we reverse the district court and grant summary judgment for him, and although there is authority for such a procedure,[21] we believe that the course more consistent with our reasoning—particularly our reluctance to require strict burdens of proof in these cases—is to return the matter to the agency for a further hearing. Such a procedure will enable the agency to remedy its processes so as to ensure that all relevant evidence pertaining to these matters will be considered.[22]

The district court's order of summary judgment will be vacated and the matter remanded to the agency for a further hearing.

---

cal purposes, the ultimate issue in the proceeding.

**20.** Exhibit 18, Administrative Transcript at 103. To obtain the maximum benefit from a vocational expert's skill and experience, while also ensuring that the expert does not usurp the role of ultimate factfinder, it has been suggested that the expert focus on three interrelated questions: "(1) What transferable skills does the claimant have? (2) Are there jobs that can be performed with those skills, given the functional limitation resulting from his medical condition? and (3) How many jobs exist locally and in the national economy?" *J. Mashaw, et al., supra* note 14, at 77.

**21.** *E. g. Rossi v. Califano*, 602 F.2d 55, 59 (3d Cir. 1979); *see* 42 U.S.C. § 405(g) (1976) (re-

viewing court has power to enter judgment on basis of administrative transcript "affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing").

**22.** We note also that a requirement is implicit in HEW's regulations that psychological adjustment to new and different work by a person of Dobrowolsky's age be considered by the ALJ in determining disability. In this regard, guidance may be furnished by a vocational expert or by a qualified psychologist. *See* Paul, *Vocational Disability and "Expert" Testimony: A Riddle of the Sphinx Resolved*, Pa.L.J., June 11, 1979, at 1.