Ulysees BURNETT

v.

Patricia Roberts HARRIS, Secretary of
Health and Human Services

Civ. A. No. 80–1792.

United States District Court,
E. D. Pennsylvania.

March 24, 1981.

Daniel M. Jaffe, Kirschner, Walters &
Willig, Philadelphia, Pa., for plaintiff.

William E. Gordon, Jr., Philadelphia, Pa.,
for defendant.

MEMORANDUM

GILES, District Judge.

Plaintiff, Ulysees Burnett, appeals the
Secretary's final decision denying his claim

for disability benefits under the Social Security Act.[1] The issue presented is whether substantial evidence exists to support the Secretary's decision. For the reasons that follow, the summary judgment motions of both parties are denied and the case shall be remanded to the Secretary for proceedings consistent with this opinion.

On April 17, 1979, claimant filed an application for disability benefits with the Department of Health, Education and Welfare at its branch office in Philadelphia alleging that on December 12, 1978 he became disabled. His claim was denied on June 17, 1979. On July 25, 1979, his request for reconsideration was also denied. Tr. 163, 167. Claimant then requested a hearing before an Administrative Law Judge ("ALJ"). On October 26, 1979, the requested hearing was held. In a decision dated February 14, 1980, the ALJ held claimant not entitled to benefits. The Appeals council affirmed the ALJ decision on April 1, 1980 and on May 8, 1980 claimant filed his complaint in this court.

### I. Facts

In his application for disability insurance benefits, claimant, then fifty years old, alleged that he was physically disabled from performing basic functions associated with his former employment as a truck driver and pest controller for the City of Philadelphia. (Tr. at 148). Claimant worked for the City for over twenty years. (Tr. 48). Burnett ascribed his disability to the effects of uncontrolled diabetes mellitus, arteriosclerosis, hypertension, heart disease, arthritis, and lingering numbness from strokes suffered in 1977 and 1978. (Tr. 147–48, 152–53). His complaints of physical impairments were corroborated by written reports from his treating physicians who had conducted extensive clinical evaluations of the claimant over the past several years and had recommended his retirement. (Tr. at 121, 129, 137, 147, 175–208).

The government did not introduce into evidence any contrary medical facts. Indeed, in denying claimant's application for disability benefits on June 17, 1979, the government relied upon evidence submitted by Dr. Titus, and a July 31, 1978 report of the John F. Kennedy Memorial Hospital (hereinafter "Hospital") (Tr. 161–164). Dr. Titus was claimant's physician.[2]

### II. Discussion

A claimant satisfies his initial burden of proving entitlement to disability benefits by having his treating physician substantiate his subjective claims. *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). The ALJ is not bound to accept the conclusion of claimant's physician without weighing it against other relevant evidence. *Urgolites v. Finch*, 316 F.Supp. 1168 (W.D.Pa.1970). An ALJ must resolve contradictory medical evidence and give reasons for accepting or rejecting such evidence. *Cotter v. Harris*, 642 F.2d 700, 703–708 (3d Cir. 1981). If no contradictory evidence exists, the ALJ is bound by the expert opinions of claimant's treating physician regarding the existence of the disability. *Rossi v. Califano*, 602 F.2d at 57–58; *Eiden v. Secretary of H.E.W.*, 616 F.2d 63, 64 (2d Cir. 1980); *McLaughlin v. Secretary of H.E.W.*, 612 F.2d 701, 705 (2nd Cir. 1980).

The Secretary then must come forward with evidence showing that given claimant's age, education, and work experience, claimant can perform specific jobs in the national economy. If no finding exists re-

---

1. Jurisdiction of this court is founded upon 42 U.S.C. § 405(g) (1976).

2. The reports of Dr. Titus dated May 31 and June 2, 1979 state that claimant was diagnosed as being obese, hypertensive, diabetic and suffering from "freezing" arthritis and pain in the shoulder. Tr. 122, 124. The reports also indicate "end organ" damage to the eyes, myocardial infarction and heart enlargement, and that claimant's clinical course was "uncontrolled." Tr. 121–122, 124.

The July, 1978 John F. Kennedy Memorial Hospital report stated that claimant was admitted upon complaints of recurrent Bell's Palsy. When discharged his diagnosis included recurrent Bell's Palsy, diabetes mellitus, obesity and a history of mild hypertension. Tr. 137. The report also noted that when he was admitted and when he was discharged, claimant's blood pressure was in the normal range, and that during his hospital stay his "sugar" was controlled. Tr. 137–138.

garding alternative employment, a denial of disability benefits can be upheld only if there is medical evidence of record that claimant's impairment did not prevent him from engaging in his former employment. *Rossi, supra,* at 57. The Third Circuit has mandated that leniency be shown in establishing claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed. *Smith v. Harris,* 644 F.2d 985, 989 (3d Cir. 1981).

> "[A]lthough the burden is upon claimant to prove his disability, 'due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.'"

(citations omitted).

■ In the instant case, there is no evidence regarding alternative vocations. Accordingly, the Secretary's decision can be upheld only if claimant failed to satisfy his burden of showing his inability to work as a truck driver. Claimant made out a *prima facie* case of entitlement to disability benefits due to his subjective complaints corroborated by his physicians' clinical findings and their recommendations that he not return to work. *Livingston v. Califano,* 614 F.2d at 345; *Rossi v. Califano,* 602 F.2d at 57.

■ In deciding to deny claimant's application for disability benefits, the ALJ relied heavily upon hospital notes covering the period of July 25, 1978 through November 9, 1979. Those records show that in November, 1979, claimant came to the hospital complaining of pain in the right side of his face, occasional headaches and pain in his right hand at night. Tr. 175. The physician noted that claimant suffered high blood pressure but that the blood pressure and claimant's sugar were well controlled. This medical evidence together with findings that claimant appeared to have completely recovered from Bell's Palsy, had an improved right shoulder, appeared free of

hemorrhages or exudates, and had a negative January, 1979 stress test, all led the ALJ to deny claimant's application. Tr. 48–50.

To rebut this evidence, claimant filed of record a physician's report by Dr. Titus, his treating physician, dated January 7, 1980. The ALJ admitted the report into evidence on February 14, 1980, the day she delivered her opinion denying Burnett's claim. In the report, Dr. Titus stated claimant was obese, suffered from arteriosclerotic hypertensive heart disease, uncontrolled diabetes and arthritis. In denying claimant's application for disability benefits, the ALJ failed to reconcile or even discuss this conflicting medical evidence. The July, 1978 and November, 1979 hospital reports both show that claimant's blood pressure was within normal limits or well controlled, as was his diabetes. Tr. 138, 175. However, these earlier readings conflict drastically with the medical reports of Dr. Titus and especially his later report of clinical findings dated January 7, 1980.

Dr. Titus' January, 1980 letter is consistent with his earlier reports.[3] It is also later than, and contradictory of, the November, 1979 hospital discharge summary. Furthermore, the court notes that the 1979 hospital report corroborates claimant's claims of pain. In reaching his decision, the ALJ should have considered the January, 1980 letter, resolved the conflicting medical data, and given reasons, supported by medical evidence of record, for her ruling. She did not do so.

> "[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored. As we stated in *Dobrowolsky v. Califano,* 606 F.2d 403 (3d Cir. 1979)
>
> > 'unless the Secretary has analyzed all evidence and has sufficiently explained

---

**3.** The previous letters of Dr. Titus were dated December 19, 1978 and April 19, 1979. Tr. 206, 207. His previous medical reports were dated

May 29, 1979 and June 2, 1979. Tr. 121–122, 124.

the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's [duty].' "

*Cotter v. Harris, supra,* at 705.

In this case, the ALJ stated:

"The mere assertion of pain does not bar a factfinder's conclusion, based upon more persuasive evidence, that the asserted pain does not exist or is of such degree that it does not foreclose gainful employment. Were this so, every claimant alleging pain would have to be awarded benefits. Claimant's assertions that his pain reached disabling proportions lack credibility and must be rejected."

Tr. 49.

The ALJ failed to state, however, what "more persuasive evidence" was relied upon in rejecting either claimant's complaints of pain or Dr. Titus' corroborating clinical findings. Indeed, the medical records are replete with evidence of claimant's complaints of pain. Tr. 137, 175, 178–180. The very report (November, 1979) upon which the ALJ relies so heavily evinces that claimant suffered pain in his face for which he had to take codeine; that he suffered pain in his right hand at night and has occasional headaches. Tr. 175. The government offered no medical evidence, contradicting claimant's assertion of pain.

Recently, the Third Circuit Court of Appeals held:

"The ALJ's error in drawing an inference . . . of a lack of disabling pain is compounded by the absence of corroborating medical testimony. Such evidence is essential to a finding of nondisability . . . Here, all evidence as to disabling pain is favorable to plaintiff. An ALJ may not make purely speculative inferences from medical reports . . . Pain may be disabling . . . and a claimant's assertions of pain must be given serious consideration . . . even where those assertions are not fully confirmed by objective evidence . . . ."

*Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981) (citations omitted). *And see Smith v. Harris, supra.*

The *Smith v. Califano* majority noted that some courts have reversed an ALJ for failing to give serious consideration to subjective complaints of pain. *Id.* at 972. While the court will not decide that issue now, a perusal of the record reveals no medical evidence which discounts claimant's complaints of recurring, disabling pain.

Where subjective complaints, like pain, have been accompanied by medical reports directly supporting the complaints, the Third Circuit has held that a remand may be appropriate. *Id.; Kennedy v. Richardson,* 454 F.2d 376 (3d Cir. 1978). In this case, the court shall remand the case to the ALJ because the medical evidence in Dr. Titus's January 7, 1980 letter conflicts with that of the hospital notes for July 25—November 9, 1979, and because the ALJ failed to reconcile those conflicts or to consider Dr. Titus' January, 1980 letter. Furthermore, the ALJ failed to support, with medical evidence, her ruling that claimant's complaints lacked credibility. Whether such evidence exists must first be addressed by the ALJ.

Accordingly, this case is remanded to the Secretary for prompt disposition.