**Daniel P. COTTER, Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services.**

**No. 80–2027.**

United States Court of Appeals, Third Circuit.

April 29, 1981.

### SUR PETITION FOR REHEARING

Before ADAMS, GARTH and SLOVITER, Circuit Judges.

SLOVITER, Circuit Judge.

The petition for rehearing filed by Appellee, Patricia Roberts Harris, Secretary of Health and Human Services, in the above entitled case having been submitted to the judges who participated in the decision of this court and no judge who concurred in the decision having asked for rehearing, the petition for rehearing is denied. 642 F.2d 700.

Judge Garth would grant the petition for rehearing for the reasons expressed in his separate opinion filed at the time of the majority opinion and for the additional reasons expressed in his opinion Sur Denial of Petition for Panel Rehearing.

### SUR PETITION FOR REHEARING BEFORE PANEL

### OPINION OF THE COURT
SLOVITER, Circuit Judge.

The usual, and we believe preferred, practice where the opinions of the panel have already been expressed in majority and dissenting opinions is to rule without opinion on a motion for panel rehearing. It is only because of Judge Garth's action in issuing an opinion sur the denial of rehearing in this case in which he has already authored a dissenting opinion that I am prompted to issue this opinion in response, notwithstanding my extreme regret for this proliferation of opinions.

The Secretary has filed a petition for rehearing which argues that the opinion of the court imposes "an unwarranted administrative burden" on Administrative Law

# 482

Judges.[1] The petition also refers to facts and predictions of caseloads and procedures which are not in the record, all of which Judge Garth repeats verbatim in his opinion as if they were properly before us.

The opinion of the court does not, as Judge Garth suggests, place an onerous burden on the ALJ called upon to decide whether a claimant is entitled to social security disability benefits. The opinion simply requires that the ALJ indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence which would have suggested a contrary disposition. As the opinion for the court makes clear, the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.

Nor should this "requirement" disrupt the processing of disability claims. Judge Garth relies on additional statistics which have not even been proffered by the Secretary in the Petition for Rehearing. Even if they are correct, then approximately 50% of the applications handled by ALJs receive opinions; in cases which are appealed to the courts, the percentage no doubt is much higher. Especially when the ALJ has decided to write an opinion, it is difficult to credit the assertion that insistence on a concise explanation for the rejection of probative evidence will further delay adjudication of disability claims. The court's opinion does not require the ALJ to undertake any additional inquiry, but merely to explain the basis for the decision to reject evidence which s/he has already made.

If anything, this court, by specifying the information it needs to conduct meaningful judicial review, contributes to enhanced understanding between the ALJs and the court and thereby facilitates the final resolution of applications for disability benefits.[2] When the court articulates the prerequisites for review, it can subsequently expect the ALJs to furnish explanations adequate for the court to exercise its review function. This should reduce the time required for the court to review the record and obviate the need for remands to develop a more adequate record. In this way, the court's decision in this case promises to expedite, rather than to obstruct, ultimate disposition of social security cases.

GARTH, Circuit Judge, dissenting from order denying panel rehearing.

Judge Sloviter, in her opinion Sur Petition for Rehearing Before Panel, states: "The usual, and we believe preferred, practice where the opinions of the panel have already been expressed in majority and dissenting opinions is to rule without opinion on a motion for panel rehearing." She also expresses regret for "this proliferation of opinions." I do not, however, know of any such "usual" and "preferred" practice. To the contrary, I have always believed that when vital information such as that now furnished by the Secretary is made available to us in a filed petition, a judge of this court has an obligation and a duty to express himself with respect to such information, particularly when the rule which the majority seeks to impose can have the effects which the Secretary foresees. Thus, I am not troubled by any alleged "preferred" practice nor by the majority's concern with a proliferation of opinions. I observe that it is not unusual for multiple opinions to be filed whenever standards mandated by Congress are sought to be modified by the court. See, e. g., NLRB v. Pincus Brothers, Inc.-Maxwell, 620 F.2d 367 (3d Cir. 1980) (standard by which we review the NLRB's decision of deferral to an arbitration

1. The Secretary never makes the claim, as does Judge Garth, that "the majority's decision ... will have a *devastating impact* on the workload of the agency." Dissenting opinion, at 484–485 (emphasis added).

2. Even Judge Garth, in his dissent to the opinion of the court in this case, stated, "I cannot deny that requiring an ALJ to explain why he has rejected certain testimony may be very helpful and indeed would give added assurance to a reviewing court in reaching its decision." *Cotter v. Harris*, 642 F.2d 700 at 709 (3d Cir. 1981).

award). Therefore, if, in the fulfillment of our judicial responsibility a "proliferation of opinions" results, I cannot become unduly disturbed.

Proceeding to more substantive concerns, after the opinions in this case were filed, the Secretary of Health & Human Services petitioned for panel rehearing. That petition called attention to the impact that the majority opinion would have upon the agency's Administrative Law Judges and thus upon the work load of that agency. The Secretary's petition may also be read as expressing concern over the consequent delays that will ensue in processing claims because of these additional requirements. Moreover, the Secretary stressed, as I did in my original dissenting opinion, that the requirements now sought to be imposed by the majority opinion were outside the confines of the standards established by Congress by which a court is to review agency adjudications. The statistics furnished by the Secretary brings to the forefront a significant perspective that must be considered—a perspective which was not presented to the court at the time of Cotter's appeal. Nor could the Secretary's position in this respect have been presented at that time because the adverse impact of the majority opinion in this case could only be assessed by the Secretary *after* this court had filed its opinion. Indeed, the Secretary had no way of anticipating that the majority opinion would require negative reciprocal findings and reasons for the rejection of probative evidence. As I emphasized in my initial opinion where I set forth my reasons for dissenting, these requirements are neither mandated by statute nor by our prior case law.

In that opinion, I also sought to emphasize that the majority's opinion now seeks to place a severe burden upon Administrative Law Judges. I believe the Secretary's discussion of this point in his Petition for Panel Rehearing merits our attention. Indeed, the precise reason for granting a panel rehearing is to afford the panel an opportunity to consider arguments which, for perfectly legitimate reasons, were not previously emphasized. Our decision in *Cotter v. Harris* has raised very legitimate concerns on the part of the Secretary—concerns which, as I have just explained, could not have been raised previously unless the Secretary somehow possessed the power of prediction with regard to the imposition of these requirements. It is for this reason, as well as the reasons set forth in my initial dissenting opinion, that I now feel compelled to express my views dissenting from the order denying panel rehearing.

The Secretary's petition forcefully argues that the majority's newly constituted requirements will impose an exceedingly heavy burden upon the hearing and adjudicative process—a burden never contemplated nor prescribed by this Court's authorized standard of review. The petition in pertinent part reads:

> [T]he majority's opinion imposes a *per se* rule in all disability adjudications requiring the Administrative Law Judge to state his or her reasons for rejecting evidence. (Opinion, pages 708–710). The Secretary shares Judge Garth's concern and requests that this panel *reconsider its decision insofar as it sets an additional requirement which would, without exception, require the Administrative Law Judge to make reciprocal negative findings and to give reasons why evidence was discredited.*[1] (emphasis supplied)

---

[1] The majority's opinion has already been relied upon by the District Court as a basis for requiring the Administrative Law Judge to state reasons for rejecting evidence. *See*, for example, *Burnett v. Harris*, 512 F.Supp. 98 (E.D.Pa.1981); *Summers v. Harris*, 513 F.Supp. 115 (E.D.Pa.1981).

The Secretary submits that the needs of judicial review can be met without requiring, in every case, a statement of each negative finding and supporting reasons. For example, in *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), despite the Administrative Law Judge's failure to explain why contradictory evidence was rejected, this Court was able to conclude that the substantial evidence test was met after

considering the record and relating it to the Administrative Law Judge's findings. In fact, the *Baerga* decision stated only that the Administrative Law Judge's findings should be as comprehensive and analytical as *feasible* and, *where appropriate,* should include a statement of subordinate factual foundations on which ultimate factual conclusions are based. *Id.,* at 312. This language has been quoted approvingly most recently in *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir. 1979) wherein this Court avoided imposing *per se* rules governing the contents of administrative decisions. *Baerga* is illustrative of the frequent instances in which only an indication by the Administrative Law Judge of the evidence considered credible will be sufficient for the purpose of judicial review. Where evidence is unsupported by the facts of record, internally inconsistent, or contradicted by more comprehensive or more reliable evidence, the reasons for discrediting such evidence may be apparent on the face of the record. To require an explanation for rejecting all contradictory evidence, even when the reasons are apparent or where the decisive findings are supported by substantial evidence, would be an unwarranted administrative burden [2] and of minimal assistance to a reviewing Court. As Judge Garth points out, in those cases where the reviewing Court is satisfied that a particular finding is supported by substantial evidence, the additional requirement of reciprocal negative findings and supporting rationale by the Administrative Law Judge would exceed the Court's scope of review. (Opinion pages 709–710).[3]

---

[2] Approximately 15,400 requests for a hearing before an Administrative Law Judge are currently pending in this Circuit, an average backlog of 234 cases for each available Administrative Law Judge.

Nationally, there are approximately 120,859 cases pending or an average of 176 cases for each available Administrative Law Judge.

[1.] I point out that although these statistics were not made a part of the record in *Cotter,* they have been furnished by the government agency responsible for processing these claims. Moreover, the majority, probably for this reason,

(The agency also projects that it will receive approximately 336,505 requests for a hearing in Fiscal Year 82, roughly, a 20 percent increase over Fiscal Year 81). It is apparent that the decisions of this Court can have a proportionately greater impact upon the workload of the agency than any other Court.

[3] *See also* the recent Supreme Court decision in *Steadman v. S.E.C.,* [—— U.S. ——, 101 S.Ct. 999, 67 L.Ed.2d 69] (49 LW 4174 February 24, 1981) where the Court, in deciding the question whether the standard of proof used by an Administrative Law Judge in a Security and Exchange Commission hearing was proper, took time to restate the confines to which a reviewing court is limited. It is not a reviewing court's function to "weigh evidence but only to determine that there is, in the record, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" 49 LW 4174, 4176 [—— U.S. ——, ——, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69]. Given that an Administrative Law Judge's decision indicates that all the evidence has been considered, and that the findings are adequately supported by probative evidence, reasons why other evidence was rejected are not material to court review.

We have been informed that over 90% of the cases heard by ALJs go to "trial", and at least 50% of these cases require full written decisions. These statistics were furnished by the Deputy Associate Commissioner, Office of Hearings and Appeals for the Department of Health & Human Services.[1] This volume has resulted in record backlogs and delays, despite the size of the ALJ corps, which is twice as large in number as all other Administrative Law Judges serving the federal government. Note 2 of the petition for rehearing which I have reproduced above indicates an average backlog of 234 cases for each available Administrative Law Judge in our Circuit. That note also recites that there are 120,859 cases pending nationally and that a projected increase of 20% in the number of requests for hearings is expected for fiscal year 1982. If this increase is realized, it is estimated that some 336,505 requests will be processed by the Secretary. Thus a rough calculation indicates that about 300,000 of these cases will go to trial, and at least 150,000 will require opinions. As a

does not take issue with their validity. Thus, there is no reason why these case load statistics and the Secretary's argument should not be considered.

85

result, the majority's decision in *Cotter* will have a devastating impact on the workload of the Social Security Agency. The requirements which we have imposed, making it mandatory for ALJs to give their reasons for rejecting probative evidence and to make reciprocal negative findings, must inevitably impair the quality and responsiveness of this system. I suggest that the majority fails to recognize the additional burden which will now be placed upon ALJs by virtue of their having to enumerate negative reciprocal findings and provide explanations for their rejection of all probative evidence.

This court's opinion in *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979), written by Judge Adams, revealed an awareness of the problem to which I have adverted, when it referred to the large volume of disability cases adjudicated by the Agency. The statistics reported in *Dobrowolsky*, which at that time were far less in number than those now projected, nevertheless disclose the enormity of the problem. In 1979, when *Dobrowolsky* was filed, Judge Adams observed that the Social Security Administration had received approximately 92,000 requests during the previous year for hearings on disability insurance benefits. *See* 606 F.2d at 409 n. 18. When this figure is contrasted with the projected 336,505 requests noted in the petition for rehearing, it is understandable why the agency has reacted so strongly to our opinion, for the majority opinion now has added substantially to the pressures which the Administrative Law Judges presently face.

Moreover, the impact of our decision has already been felt within our Circuit. Despite the fact that I believe these additional requirements are not binding and constitute no more than *obiter* dictum, note 1 of the petition for rehearing which I quote above reveals that the District Court in the Eastern District of Pennsylvania has apparently remanded two different proceedings to Administrative Law Judges, so that reasons for rejecting evidence may be furnished. In light of the inordinate backlog and delays which already confront the agency, and

in light of the enormous increase in filings and hearing requests which are forecast, it is illogical that our court should add to these burdens by requiring Administrative Law Judges to review cases which have already been adjudicated in order to mandate compliance with a requirement which Congress has not prescribed.

Finally, the majority suggests that our new requirements will facilitate *judicial* review of these cases. Although, as I have previously indicated in my original dissent, these additions to an ALJ's opinion may be helpful and reassuring in our review of his decision,[2] I fail to see how requiring ALJs to make negative reciprocal findings and to provide reasons for rejecting probative evidence will lighten our load in any way. To execute our function properly, we must always undertake a thorough review of the record to determine whether the Secretary's determination is supported by substantial evidence. Since this is the standard imposed upon us by statute, I am hard pressed to understand how adding more chores to an Administrative Law Judge's task can expedite our review of social security cases.

I therefore respectfully dissent from the order of this court denying the Secretary's petition for rehearing.

---

**2.** *Cotter v. Harris*, 642 F.2d 700 at 709 (3d Cir. 1981).