

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-19-2004

# Garcia v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3775

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Garcia v. Comm Social Security" (2004). *2004 Decisions.* Paper 808.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/808

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NO. 03-3775

ABRAHAM GARCIA
Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

On Appeal From the United States
District Court
For the District of New Jersey
(D.C. Civil Action No. 00-cv-05782)
District Judge:  Hon. William J. Martini

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 16, 2004

BEFORE:  RENDELL, STAPLETON and LAY,* <u>Circuit Judges</u>

(Opinion Filed :  April 19, 2004)

---

* Hon. Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by
designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellant Abraham Garcia appeals the decision of the United States District Court for the District of New Jersey affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") to deny Garcia's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties are familiar with the facts and procedural history. Hence, we limit ourselves to a brief statement of the reason for our decision.

For the reasons that follow, we will affirm the decision of the District Court upholding the Commissioner's denial of benefits.

I.

The District Court had jurisdiction to review the Commissioner's final determination under 42 U.S.C. § 405(g) and we have jurisdiction under 28 U.S.C. § 1291. Our review of the Commissioner's final decision to deny benefits is limited to a determination of whether that decision is supported by substantial evidence. *See, e.g.*, *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2545, 101 L.Ed.2d 490 (1988)).

II.

Both types of benefits Garcia seeks are only available if, *inter alia*, Garcia is "disabled." In determining whether a claimant is disabled, the Commissioner must follow the familiar five-step sequential analysis set forth in the regulations promulgated by the Social Security Administration. *See* 20 C.F.R. §§ 404.1520, 416.920. Garcia primarily objects to the ALJ's determination of his residual functional capacity during that process, and claims that the ALJ did not explicitly state why he "rejected" certain medical test results, in violation of *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981) ("*Cotter I*") ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected.").

As we later indicated, *Cotter I* "simply requires that the ALJ indicate that s/he has considered all the evidence, both for and against the claim, and provide some explanation of why s/he has rejected probative evidence which would have suggested a contrary disposition." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981) ("*Cotter II*"). Garcia suggests that the ALJ provided no indication that he had considered results from electromyography ("EMG"), nerve conduction velocity ("NCV"), and magnetic resonance imaging ("MRI") tests, which, Garcia argues, would have resulted in a different residual functional capacity assessment if properly credited by the ALJ.

3

The ALJ's opinion does not explicitly reference these test results. The ALJ indicated, however, that he considered the "series of 10 reports between October 25, 1996 and December 3, 1997" by Garcia's treating physician, Roger Behar, M.D. Results from the EMG/NCV tests are contained in Dr. Behar's November 20, 1996 report. Those results indicate that Garcia suffered from "bilateral C7 radiculopathies, worse on the right than the left."

Contrary to Garcia's suggestion, however, that the ALJ implicitly "rejected" these results, the ALJ ultimately concluded that Garcia suffers from "a severe shoulder injury" that "restrict[s] his ability to do fine finger manipulation." Given that the ALJ clearly considered Dr. Behar's reports (including the one containing the EMG/NCV test results) and that, as the District Court noted, the ALJ concluded that Garcia's shoulder was severely impaired, we cannot agree that in not specifically referencing the EMG/NCV test results the ALJ failed to "provide some explanation of why s/he has *rejected* probative evidence which would have suggested a *contrary* disposition." *Cotter II*, 650 F.2d at 482 (emphasis added).

Garcia further suggests that the ALJ ignored a report by Dr. Schonfeld discussing MRI results that showed a "minimal central atrophy," "mild cortical atrophy," and "chronic deep white matter ischemic change," thereby again violating *Cotter*. The MRI report, however, does not discuss any discernible impairment in light of these test results, and the record does not show that any physician opined that the MRI scan

4

demonstrated any impairment. Furthermore, as the District Court noted, Dr. Behar's reports as treating physician do not indicate any change in his diagnosis in light of the MRI results. Accordingly, we find no *Cotter* violation here because these MRI results alone do not amount to probative evidence that would have suggested a contrary disposition.

Garcia also contends that the ALJ violated *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000) because he utilized the Medical-Vocational Grids after finding that Garcia suffers from both exertional and nonexertional impairments. As we noted in *Sykes*,

> [t]he grids establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform. When a claimant has an additional nonexertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments. The grids do not purport to answer this question, and thus under [*Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)] the practice of the ALJ determining without taking *additional evidence* the effect of the nonexertional impairment on residual functional capacity cannot stand.

*Id.* at 270 (emphasis added). Accordingly, we held that in order for the Commissioner "to meet [her] burden of establishing that there are jobs in the national economy that a claimant with exertional and nonexertional impairments can perform," the Commissioner is required to provide "the testimony of a vocational expert or other similar evidence, such as a learned treatise. In the absence of evidence *in addition to the guidelines . . .*, the

5

Commissioner cannot establish that there are jobs in the national economy that someone with the claimant's combination of impairments can perform." *Id.* at 273 (emphasis added).

While the ALJ did rely in this case upon the grids in determining whether Garcia is disabled, he did so finding "that the claimant can perform work within the full range of medium work [even] with the non exertional limitations noted above," and suggested that Garcia was capable of working as a "drill press operator, packer [or] scrap separator." This determination was reached after the ALJ had noted earlier in his opinion that he had consulted a vocational expert who "stated that a man similarly situated to the claimant who was capable of performing medium work with the non exertional limitation of an inability to do fine fingering manipulation would be able to perform jobs that exist in significant numbers in the national economy"[1] and indicated that such an individual could perform jobs such as "a drill press operator, a scrap separator and a packer." Thus, the ALJ's conclusion that Garcia could perform some medium work even with his nonexertional limitations was expressly based upon the testimony of a vocational expert.

Accordingly, once the ALJ determined that Garcia could perform medium range work given his exertional limitations, the ALJ here acted entirely in accordance

---

[1] The ALJ's actual question posed to the vocational expert included the additional nonexertional limitation of a "slight lack of ability to concentrate," a limitation that ultimately was not expressly adopted by the ALJ's findings. The fact that the vocational expert considered this additional limitation, however, does not amount to any prejudice to Garcia because it only served to further limit the available work Garcia could perform based upon a limitation the ALJ did not ultimately adopt.

with *Sykes* by seeking the expertise of a vocational expert to determine whether an individual capable of medium range work but possessing Garcia's nonexertional limitations could still perform jobs available in significant number in the national economy. We therefore find no *Sykes* violation.[2]

Garcia additionally argues that the ALJ failed to properly credit his testimony of pain. "[A claimant's] subjective complaints must be substantiated by medical evidence." *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992); *see also* 20 C.F.R. §§ 404.1529(a) and 416.929(a) (ALJ is to consider "the extent to which [a claimant's] symptoms [including pain] can reasonably be accepted as consistent with the objective medical evidence and other evidence"). Garcia has the burden of proving that medical evidence validates his subjective claims. *Williams*, 970 F.2d at 1186. "[T]here must be objective medical evidence of some condition that could reasonably produce pain," but "there need not be objective evidence of the pain itself." *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).

"Once an ALJ concludes that a medical impairment that could reasonably

---

[2] Garcia also suggests that the ALJ erred in formulating his hypothetical question for the vocational expert to the extent that question assumed that Garcia could perform medium work (as constrained by his nonexertional limitations) because, Garcia argues, the record does not support a finding that, in light of his exertional limitations, he could perform medium work. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."). We disagree. The reports of Drs. Sanchez and Sandler, as discussed *infra*, constitute substantial evidence in support of that finding.

cause the alleged symptoms exists, he or she must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

The ALJ here noted that Garcia "testified that his back hurts so much that he can't sit for more than 10 minutes. He alleviates the pain by standing but he can't stand for more than a few minutes either." The ALJ further acknowledged that Dr. Behar's reports contained complaints of pain. The ALJ concluded, however, that "[t]he reports of Drs. Sanchez and particularly Sandler paint the picture of a man whose stated complaints do not match the physical findings." Accordingly, the ALJ determined that there was insufficient objective medical evidence of Garcia's pain, and that Garcia's claims of pain were not entirely credible.

Garcia argues that the ALJ should have credited his testimony as to pain, and should have recognized his medications and the side effects of those medications as objective evidence of a medical condition that could reasonably produce pain. We have held that "[t]estimony of subjective pain . . . is entitled to great weight, particularly when it is supported by competent medical evidence." *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983) (alterations omitted). Nonetheless, an ALJ may reject a claim of disabling pain where "he [has] consider[ed] the subjective pain and specif[ied] his reasons for

8

rejecting these claims and [has] support[ed] his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

The ALJ's determinations with respect to objective medical evidence and Garcia's credibility are supported by substantial evidence. The July 1996 report by Dr. Sanchez relied upon by the ALJ indicated that "[t]he patient has not been noted to have any problems with walking, sitting, lifting, or handling objects or hearing, speaking or traveling. There are no disorders of mental activities such as understanding, or memory loss. There [are] no problem[s] with sustained concentration or persistence [that] have been noted." Dr. Sandler's December 1996 report acknowledged Garcia's complaints of pain, but found that muscle strength was "essentially normal, or, at worst, 4/5 on the right side," and that Garcia had a "normal range of motion" and normal gait. The report further suggested that "[e]xamination reveals a gentlemen who walks with a cane but obviously can walk without the cane" and that when Dr. Sandler asked Garcia to do a knee bend, "[e]ven with my holding his hands . . . he managed to fall over backward. From what I could see, there was absolutely no reason for this." Given these reports, we cannot say that the ALJ erred in rejecting Garcia's subjective complaint of pain where the ALJ supported his conclusion with medical evidence suggesting no basis for that pain.[3]

_____

[3] We note that Garcia has filed multiple applications for disability benefits over the past 15 years. The relevant time span for purposes of the application we are currently reviewing is the two-year period from December 1995, when Garcia stopped working, through December 1997, when his application for benefits was denied. While it is true that Garcia received benefits from sometime in 1991 until early 1993, and it is also true that he is currently receiving benefits for a period beginning on December 21, 1997,

9

Lastly, Garcia objects to the ALJ having made observations as to Garcia's demeanor during testimony. The ALJ in his opinion stated that Garcia

> followed the entire proceeding without [apparent] difficulty. [He also] sat for the entire hearing, which lasted over an hour, without once appearing to be in any discomfort whatsoever. [A]t one point he reached into his back pocket with his right hand, took out a cloth handkerchief, unfolded it, blew his nose and carefully refolded it and replaced it into his back pocket. All the while he was doing this with his right hand.

As Garcia suggests, we have held, on numerous occasions, that an "ALJ may not substitute his personal reaction to [a] Claimant's responses or physical appearance for the opinion of the treating physicians." *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986); *see also, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2002) ("Although an ALJ may consider his own observations of the claimant and this Court cannot second-guess the ALJ's credibility judgments, they alone do not carry the day and override the medical opinion of a treating physician that is supported by the record. . . . The ALJ cannot . . . disregard [a] medical opinion based solely on his own amorphous impressions, gleaned from the record and from his evaluation of the claimant's credibility.") (internal alterations and quotations omitted); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988).

---

medical reports from those periods of time are not helpful in determining the severity of his condition during the relevant time span. Limiting our review to the reports describing his impairments between late 1995 and late 1997, as the ALJ did, we cannot conclude that the ALJ overlooked any objective medical evidence thAt would corroborate or explain Garcia's subjective complaints.

The ALJ here, however, did not disregard one medical opinion based solely on his own impressions. Instead, the ALJ relied on the reports of Drs. Sanchez and Sandler in support of his conclusions. *See Jones v. Sullivan*, 954 F.2d 125, 128-29 (3d Cir. 1991) (where claimant alleged that ALJ substituted his own lay observations of claimant's condition for the findings of the treating physician, and treating physician's opinions were contradicted by findings of two state agency physicians, ALJ did not err in determining that treating physician's opinions were not controlling). Having reviewed the reports of Drs. Sanchez and Sandler, we cannot say that the ALJ's conclusions were not supported by substantial evidence in light of those reports.

III.

For the reasons stated, the judgment of the District Court will be affirmed.