Johnny E. GATHRIGHT, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

Civ. No. 92–801 JP/WWD.

United States District Court, D. New Mexico.

July 22, 1993.

Gary J. Martone, Albuquerque, NM, for plaintiff Johnny E. Gathright.

Ronald F. Ross, U.S. Atty's Office, Dist. of New Mexico, Albuquerque, NM, for defendant Secretary of Health and Human Services.

## MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

Plaintiff invokes this Court's jurisdiction under 42 U.S.C. § 405(g), seeking judicial review of a final decision [1] of the Secretary of Health and Human Services (Secretary). The Secretary determined that Plaintiff is not eligible for either disability insurance or supplemental security income (SSI) benefits. Plaintiff moves this Court for an order remanding this matter for a rehearing. This Court reviews the Secretary's decision to determine whether the Secretary's findings are supported by substantial evidence and whether the Secretary applied correct legal standards in making his findings. *Williams v. Bowen*, 844 F.2d 748 (10th Cir.1988).

### ADMINISTRATIVE HISTORY

Plaintiff's applications for disability insurance benefits and SSI benefits were denied at the administrative level both initially and on reconsideration. Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ). A hearing was held before the ALJ at which Plaintiff and his attorney appeared. The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. The decision of the ALJ therefore became the final decision of the Secretary for judicial review purposes.

### STATEMENT OF THE FACTS

Plaintiff alleges disability since October 1989 due to bilateral osteoarthritis of the knee. At the time of the administrative hearing, Plaintiff was about to turn 45 years old. Plaintiff has a high school education and has worked in the past as a roofer, welder, and carpenter. He has not worked since October 1989.

### A. MEDICAL RECORD

On July 20, 1990, S.K. Kassicieh, D.O., stated that Plaintiff has moderately severe degenerative joint disease in the knees. Tr. 104. Dr. Kassicieh noted that Plaintiff could not climb ladders or lift heavy objects. Id. A few weeks later, Dr. Kassicieh stated that Plaintiff could not climb stairs or kneel, either. Tr. 103. At the end of August 1990, Dr. Kassicieh observed that Plaintiff had an antalgic gait but did not need assistance to walk. Tr. 102.

In September 1990, Plaintiff underwent a consultative examination by G.T. Davis, M.D. According to Dr. Davis, Plaintiff stated that he could walk up to an hour at a time and sit without a problem, but had trouble kneeling, climbing ladders, and climbing stairs. Tr. 109. Plaintiff was not taking any medications at that time. Id. Plaintiff told Dr. Davis that the medication Dr. Kassicieh gave him did not help. Id.

Dr. Davis concluded that Plaintiff should avoid kneeling and squatting, and that Plaintiff may have some difficulty walking, carrying heavy objects, as well as going up and down ladders and stairs. Tr. 110. Dr. Davis likewise opined that Plaintiff could probably do sedentary work and light types of activities if his knees are not under undue stress. Tr. 111. X-rays of Plaintiff's right knee were within normal limits. Tr. 113.

In May 1991, Plaintiff underwent intelligence testing and a personality assessment at Kirkpatrick Consultants. According to the results of the personality testing, persons who responded to the testing as Plaintiff did may have a diagnosis of somatoform disorder. Tr. 118. In other words, stress and long standing personality problems could lead Plaintiff to develop physical symptoms. Tr. 119. Plaintiff's intelligence as expressed in an intelligence quotient (I.Q.) number was average. Id.

---

**1.** The Secretary's final decision is attached to this memorandum opinion and order as Exhibit A.

In June 1991, Charles Bradshaw, Ph.D., saw Plaintiff for a psychological evaluation. Dr. Bradshaw noted that at the interview, "[t]here was no indication of any serious depression." Tr. 127. Dr. Bradshaw further stated that in a work setting Plaintiff "may need quite a bit of supervision to stay on tasks. He probably would not enjoy challenges to any degree and it does not appear that he could deal with much stress in a job setting. He also would possibly have difficulty interacting with peers and supervisors." Tr. 127–A. Plaintiff might also have problems following verbal direction. Id. Dr. Bradshaw observed that Plaintiff got up twice during an hour and a half to stretch his leg. Id.

Plaintiff responded to Dr. Bradshaw's personality testing as one who tends to exaggerate complaints somewhat. Tr. 128. Dr. Bradshaw was not sure whether Plaintiff deliberately tried to make his condition look bad or was just pessimistic. Id. Plaintiff also responded to the personality testing as one who is significantly depressed. Id. That response was consistent with Plaintiff's description of his emotional state. Id.

Dr. Bradshaw found Plaintiff's I.Q. to be close to or within the low normal range. Id. Dr. Bradshaw indicated that Plaintiff "should be able to learn to work with his head rather than his back. . . ." Id. Plaintiff told Dr. Bradshaw he would like to work perhaps with computers or do something where he could work at his own pace and allow for his knee problems. Tr. 128–29. Plaintiff, however, placed considerable limitations on the type of work he would do. Tr. 129. Dr. Bradshaw concluded that Plaintiff demonstrated "some depression" but not clinical depression or suicidal tendencies. Id.

Dr. Bradshaw rated Plaintiff's ability to make the following occupational adjustments as follows: follow work rules—between good and very good/unlimited; relate to co-workers—fair; deal with the public—between fair and poor or none; use judgment—between good and very good/unlimited; interact with supervisor—between good and fair; deal with work stress—between fair and poor or none; function independently—fair; and maintain attention/concentration—good. Tr.

130. Dr. Bradshaw considered Plaintiff's ability to carry out complex job instructions to be fair. Tr. 131. Finally, Dr. Bradshaw rated Plaintiff's ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability as fair. Id.

### B. PLAINTIFF'S TESTIMONY

Plaintiff testified that he can walk a couple of miles if he does so slowly. Tr. 31. Plaintiff also testified that he can sit for 20 minutes, stand 10 minutes, and lift and carry 20 pounds. Tr. 31, 33, 38. Plaintiff also has trouble using stairs without a bannister to hold on to. Tr. 34. Plaintiff stated he takes a prescribed pain medication which causes him to be drowsy sometimes. Tr. 34–35. The knee pain also awakens him at night. Tr. 35.

Plaintiff's daily activities include laying on the couch most of the day, a walk around the block, watching television, and collecting baseball cards. Tr. 33, 40. Plaintiff also plays chess on a computer as well as with his friends who come over twice a week. Tr. 35. Plaintiff noted that he moves to different positions when playing chess. Id. Plaintiff also goes to a spa twice a week where he sits in the whirlpool, sauna, and pool. Tr. 41. Plaintiff cleans his room and sometimes mows his sister's lawn with a gas lawn mower. Tr. 42.

### C. THE ALJ'S DECISION

The ALJ found that Plaintiff could not return to his past relevant work because of his bilateral knee osteoarthritis. Tr. 17. The ALJ also found that Plaintiff has a residual functional capacity (RFC) for sedentary work and nonexertional factors such as pain or psychological problems do not limit his RFC. Applying the grids to Plaintiff's situation, the ALJ found Plaintiff to not be disabled.

### ISSUES

Plaintiff contends that the ALJ did not base his decision on substantial evidence nor did he apply properly legal standards in finding that Plaintiff was not disabled and has

the capacity to perform the full range of sedentary work.

## DISCUSSION

### A. THE STANDARD OF REVIEW

■ The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Secretary's decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497–98 (10th Cir.1992). Substantial evidence is more than a scintilla but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Id.* It is well settled that if there is substantial evidence to support the Secretary's decision then that decision must be upheld. However, the district court should not blindly affirm the Secretary's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied. *Hogan v. Schweiker*, 532 F.Supp. 639, 642 (D.Colo.1982).

■ The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes him from returning to his past work. Once that showing is made, the burden shifts to the Secretary to show: (1) that the Plaintiff, considering his age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir.1981); *Salas v. Califano*, 612 F.2d 480, 482–83 (10th Cir.1979); *Gardner v. Brian*, 369 F.2d 443, 446–47 (10th Cir.1966).

To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1990).[2] At the first four levels of the sequential evaluation process, the claim-ant must show: 1) that he is not engaged in substantial gainful employment; 2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and 3) that his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1 (1990). If Plaintiff cannot show that he has met or equalled a listing, he must show at step four that he is unable to perform work he had done in the past. At the fifth step, the burden of proof shifts to the Secretary to show that the claimant is able to perform other substantial gainful activity considering his age, education, and prior work experience. If a determination of disabled or not disabled is found at any step, further inquiry is not required. 20 C.F.R. §§ 404.1520, 416.920 (1990).

Upon reaching the fifth step of the sequential evaluation process, the Medical–Vocational Guidelines (grids) are used in determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2 (1990). These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §§ 404.1566(d), 416.966(d) (1990). This aids the ALJ in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and RFC. 20 C.F.R. §§ 404.1545, 404.1563–.1565, 416.945, 416.963–965 (1986). These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §§ 404.1569, 416.969 (1990). The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e)(2) (1990).

■ When a claimant presents evidence of both exertional and nonexertional impairments (such as pain, respiratory problems, and diminished vision), the grids are not conclusive but merely form a framework for

---

**2.** The 1990 C.F.R.'s were in effect at the time plaintiff filed for benefits. More current C.F.R.'s are presently available.

disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; *Channel v. Heckler,* 747 F.2d 577, 583 (10th Cir.1984).

## B. ANALYSIS OF THE ALJ'S DECISION

Plaintiff makes several arguments in favor of remanding this case to the Secretary for a rehearing. First, Plaintiff argues that the Secretary should have ordered Dr. Davis to complete an RFC assessment. Second, Plaintiff argues that the ALJ should not have relied upon Dr. Davis' use of the term "sedentary" in finding that Plaintiff can do sedentary work. Third, Plaintiff asserts that the ALJ's statement regarding Plaintiff's lack of serious depression or diagnosis of an underlying psychological disorder is not supported by substantial evidence. Fourth, Plaintiff alleges that the ALJ failed to consider Dr. Bradshaw's suggested limitations on Plaintiff's ability to work. Fifth, Plaintiff contends that the grids should not have been automatically applied considering Plaintiff's significant nonexertional impairment, i.e., psychological problems. Sixth, Plaintiff alleges that the ALJ should have considered the fact that Plaintiff receives State disability benefits.

### 1. Failure to Make an RFC Assessment

■ *Rivera–Torres v. Secretary of Health and Human Services,* 837 F.2d 4, 6 (1st Cir.1988) held that a consultative physician should do an RFC assessment when no other RFC assessment is in the record, especially where the Plaintiff complains of pain, takes pain medication, and has some objective abnormality. In this case, no physician who personally examined Plaintiff did a full RFC assessment. Neither Dr. Kassicieh nor Dr. Davis determined how long Plaintiff can sit or stand, or how much weight Plaintiff can

carry. Furthermore, Plaintiff complained to Dr. Davis of knee joint pain caused by bilateral osteoarthritis and told Dr. Davis how his pain medication did not help. Tr. 109. Under those circumstances, I find that *Rivera–Torres* applies and the ALJ erred when he did not ask Dr. Davis to make a complete RFC assessment.

### 2. Dr. Davis' Definition of Sedentary

■ Dr. Davis' report does not indicate that he was using the term "sedentary" in the regulatory sense. *See Johnson v. Bowen,* 687 F.Supp. 1284, 1299 (W.D.Wis.1988). That being so, the ALJ erred in relying on Dr. Davis' conclusion that Plaintiff can do sedentary work as substantial evidence that Plaintiff can perform sedentary work as defined by the social security regulations.

### 3. Substantial Evidence of Depression

■ The ALJ stated that Dr. Bradshaw's "evaluation found no indication of serious depression and that doctor made no diagnosis of any underlying psychological disorder." Tr. 15. The ALJ, however, failed to note that Dr. Bradshaw's comment regarding "no indication of any serious depression" was made in the context of Plaintiff's mental state at the time of the interview. Tr. 127. Also, the ALJ did not mention that Plaintiff's personality test responses were like those persons who are "significantly depressed." Tr. 128. Dr. Bradshaw also stated that Plaintiff "demonstrate[d] some depression in terms of his test results and also his self-respect...." Tr. 129. Dr. Bradshaw recommended counseling to help Plaintiff "deal more effectively with his depression...." Id. Based on the above evidence, I find that no substantial evidence supports the ALJ's statement that Plaintiff has no serious depression nor a diagnosis of an underlying psychological disorder.

### 4. Nonexertional Limitations

■ In considering Plaintiff's nonexertional limitations, the ALJ failed to address several of Dr. Bradshaw's observations. Those observations include Plaintiff's possible need for supervision, inability to enjoy challenges, inability to deal with much stress on the job, difficulty interacting with peers and supervisors, and possible problem following verbal directions. Tr. 127–A. The Secretary cannot ignore evidence. *See, e.g.,*

*Cotter v. Harris,* 642 F.2d 700, 704–05 (3d Cir.), *rehr'g denied,* 650 F.2d 481 (3d Cir. 1981) (citing 20 C.F.R. § 404.939). Thus, the ALJ erred by not considering all of Dr. Bradshaw's report.

### 5. Application of the Grids

■ The grids are not automatically applied when a nonexertional impairment is significant and therefore, interferes with the ability to work. *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir.1993). In this case, substantial evidence shows that Plaintiff may have psychological problems which interfere with his ability to work as mentioned *supra.* Tr. 127–A. Those nonexertional limitations are significant enough to preclude an automatic application of the grids. The ALJ, therefore, erred when he used the grids to find Plaintiff not disabled.

### 6. Consideration of State Disability Benefits

■ Determinations of disability made by other government agencies are entitled to consideration by the Secretary. *Mandrell v. Weinberger,* 511 F.2d 1102, 1103 (10th Cir.1975). The amount of weight to be attached to another government agency's disability determination is left to the Secretary to determine. Id. The ALJ in this case did not consider Plaintiff's state disability benefits at all. Consequently, the ALJ erred in that respect.

### CONCLUSIONS

The Secretary erred in the following ways: 1) the ALJ failed to obtain a complete RFC assessment from Dr. Davis; 2) the ALJ's reliance on Dr. Davis' opinion that Plaintiff could perform sedentary work did not constitute substantial evidence that Plaintiff can do sedentary work; 3) the record did not contain substantial evidence to support the ALJ's finding that Plaintiff did not suffer from serious depression or had a psychological disorder; 4) the ALJ failed to consider the full extent of Dr. Bradshaw's report; 5) the ALJ misused the grids; and 6) the ALJ failed to consider Plaintiff's state disability benefits. For the above reasons, I cannot affirm the Secretary's decision. The appropriate action is to order a remand for a rehearing.

### WHEREFORE,

**IT IS ORDERED** that Plaintiff's motion to remand is hereby granted, and this matter shall be remanded to the Secretary for a rehearing so that she will obtain a complete RFC assessment from Dr. Davis and make an RFC determination based on that assessment and the record, properly consider Dr. Bradshaw's report in its entirety, use the grids as a framework or obtain a vocational expert to determine if Plaintiff can do other work, and consider Plaintiff's state disability benefits. The Secretary shall also make use of any further proceedings as are consistent herewith.

EXHIBIT A

## DEPARTMENT OF HEALTH AND HUMAN SERVICES
Social Security Administration

## OFFICE OF HEARINGS AND APPEALS

## DECISION

IN THE CASE OF

CLAIM FOR

Period of Disability,
Disability Insurance Benefits, and
Supplemental Security Income

Johnny Earl Gathright
(Claimant)

585–14–3804
(Social Security Number)

(Wage Earner)

The present appeal arises following the filing of a request for hearing by the above-identified claimant after he had received earlier denials by the Social Security Administration.

The undersigned Administrative Law Judge renders a decision which is unfavorable to the claimant on the issue(s) stated below. This decision is based on consideration of documentary evidence of record listed as exhibits, as well as testimony received at a hearing held on May 14, 1991 in Albuquerque, New Mexico. During the course of the present appeal, the claimant was represented by Gary J. Martone, Attorney-at-Law.

### ISSUES

The general issues are whether the claimant is entitled to a period of disability and disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act, as amended; and whether the claimant is disabled under section 1614(a)(3)(A) of the Act. The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairment(s) which can be expected to either result in death or last for a continuous period of not less than 12 months.

The specific issues are whether the claimant was under a "disability" and, if so, when such disability commenced and the duration thereof; and whether the disability insured status requirements of the Act are met for the purpose of entitlement to a period of disability and disability insurance benefits. Pursuant to the Act, the Secretary has established Social Security Administration Regulations No. 4. The regulations provide steps for evaluating disability (20 C.F.R. §§ 404.1520(a) and 416.920(a)).

### BACKGROUND OF CLAIMANT

The claimant is a younger individual (age 45) and was in the same age category on October 22, 1989, his alleged onset date. 20 C.F.R. §§ 404.1563 and 416.963. He has a twelfth grade education. 20 C.F.R. §§ 404.1564 and 416.964. His past relevant work was semi-skilled in nature as a carpenter, a welder, a roofer, a maintenance technician, and a truck driver. 20 C.F.R. §§ 404.1568 and 416.968. The claimant alleges disability due to problems with his knees.

### DISCUSSION AND EVALUATION OF DISABILITY

The initial step in the sequential evaluation of disability requires a determination on the issue whether or not the claimant is actually engaging in substantial gainful activity or whether the claimant did so during any pertinent period. 20 C.F.R. §§ 404.1520(b) and 416.920(b).

A review of information contained in the claimant's social security application(s), disability report, vocational report and other documents of record has failed to disclose any work activity of the claimant since October 22, 1989. There was no inconsistent or contradictory testimony on this issue at the hearing. Therefore, it is concluded that the claimant has not engaged in any postonset substantial gainful activity.

The second and third steps in the sequential evaluation of disability require evaluation of medical factors alone. In this regard, the medical evidence is sufficient to warrant a finding that the claimant has had at least one "severe" impairment as that term is defined, i.e. an impairment that presents significant work-related limitations (20 C.F.R. §§ 404.1520(c), 404.1521 and 416.920(c), 416.921); however, the claimant's impairment(s), singly or in combination, has not been severe enough to meet or equal an impairment listed in Appendix 1 under the evaluative standards of 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926. Special review has been given to sections 1.00ff of the Listing of Impairments, Appendix 1, Regulations No. 4.

Inquiry must now turn to the matter of residual functional capacity. Residual functional capacity represents the measure of an individual's remaining ability to perform particular work-related physical and mental functions despite the limitations imposed by the individual's impairment(s). 20 C.F.R.

§§ 404.1545, 416.945 and Social Security Rulings 82–30, 82–53, 88–13, and 85–16.

The record reflects that Mr. Gathright has complained of bilateral knee symptoms because of which he had to cease working. His treating physician wrote in August 1990 that the patient had moderately severe osteoarthritis of both knees. Motions of his knees were limited and he had an antalgic gait, but he was able to walk unassisted. His knees were tender but there was no swelling or deformity. The doctor recommended restrictions on claimant's activities only for climbing and kneeling (Exhibit 14). Mr. Gathright's medical history is noteworthy for lack of regular medical treatment. Other than the consultative orthopedic evaluation ordered by the Administration, claimant's medical records consist of only a few visits to his doctor in July and August 1990.

During his orthopedic consultative evaluation performed on September 27, 1990, Mr. Gathright reported that he could not climb, kneel or squat because of knee pain, but he could walk for an hour and had no problems sitting. He was taking no pain medications. On examination, the doctor found decreased visual acuity which was uncorrected. Claimant's gait was normal without a limp and he used no assistive devices. His knees lacked only 10 degrees of full extension, the right knee flexed to 120 degrees and the left knee flexed to 130 degrees, but there was pain with flexion beyond 90 degrees. There was slight crepitation but no swelling, synovial thickening, effusion or ligamentous instability. Claimant's main complaint was of pain with flexion. He had good strength of his hamstrings and quadriceps. X-rays of his right knee were within normal limits. The doctor advised that Mr. Gathright should avoid squatting, kneeling, carrying heavy objects, and climbing ladders and stairs. He gave his opinion, however, that Mr. Gathright was able to perform sedentary work activities (Exhibit 15).

At his hearing on May 14, 1991, Mr. Gathright testified that he needed support to walk. He stated that he could walk two miles slowly and walked one block to the park for exercise. He could sit for only 20 minutes at a time and could not stand for more than 10 minutes at a time. He described constant, throbbing knee pain. He took medications only when needed because they made him groggy. He stated that he could lift up to 20 pounds and that he regularly played chess on a computer, but moved around during that activity. He also collected basketball cards, watched television and went to the spa twice a week. He was able to clean his own room and sometimes mowed the lawn. He stated that he last saw his doctor in August 1990.

A report from a vocational counselor suggested that Mr. Gathright might be having emotional difficulties (Exhibit 17) and on June 10, 1991, he underwent a psychological consultative evaluation. He reported at that time that he lives in an apartment with his sister and that she did the cleaning, shopping and cooking. He stated that most of the time he felt depressed, but that he did not have crying spells or suicidal ideations. He has never felt seriously depressed and has never needed counseling. He had no problems with interpersonal relationships on the job while he was working. The doctor noted that claimant led a fairly active life, getting around on the bus, going to the spa, seeing his girlfriend and playing chess with and visiting with several friends (Exhibit 21).

On examination, the doctor found no evidence of serious depression. Claimant's MMPI revealed a tendency to exaggerate pain complaints. He had normal intelligence and intact attention, concentration and memory functions. His evaluation found some evidence of depression, but Mr. Gathright was mostly just pessimistic, critical and negative. He indicated that he would like to work, but he placed many restrictions on what kind of work he would like to do, stating that he was not interested in a "dead-end" job. He stated that he would like to work with computers. During his evaluation and testing, the doctor noted that Mr. Gathright exhibited no pain behaviors but only got up to stretch his legs twice (Exhibit 21).

The medical evidence and claimant's testimony establish that he has experienced work-related limitations of function due to his knee condition. Because of these symptoms he

has not been able to do heavy lifting, prolonged standing or walking, or squatting, kneeling or climbing. However, the consultative orthopedic examiner gave his opinion that Mr. Gathright is capable of sedentary work activities and this opinion is not contradicted by claimant's treating physician who would restrict his activities only for climbing and kneeling.

Mr. Gathright's testimony is noteworthy for inconsistencies with what he reported to the consultative orthopedic examiner and the observations of the doctors on his physical examinations. He testified that he could sit for only 20 minutes at a time, but during his consultative evaluation he reported that he had no difficulties sitting. He was noted to be able to sit without pain complaints during his entire psychological evaluation, with only two brief stretches. He testified that he needs support to walk, however, his treating physician wrote that he was able to walk unassisted and the consultative orthopedist noted that he used no assistive devices to walk or stand.

Mr. Gathright's MMPI showed that he has a tendency to exaggerate his complaints. He testified that he does not need pain medications on a regular basis and that he avoided taking them because they caused drowsiness. He has not required regular medical attention and has not visited his doctor for a year. He leads a fairly active life by his description of his daily activities. He is able to play chess against a computer and also with his several friends, an activity which requires the ability to sit for prolonged periods. For all the above reasons, Mr. Gathright's testimony concerning problems sitting and severity of pain he experiences is not credible. His medical examinations and the opinions of the doctors establish that he has retained a residual functional capacity which supports sitting for at least up to two hours at a time and lifting of up to 10 pounds occasionally and up to five pounds frequently throughout the day. Mr. Gathright testified that he is able to lift up to 20 pounds.

Claimant's psychological evaluation found no indication of serious depression and that doctor made no diagnosis of any underlying psychological disorder. Mr. Gathright stated that he had never felt really depressed and that he had never required or sought counseling. He reported no problems with interpersonal relationships on the job and appears to have good relations with his sister, his girlfriend and his friends. His memory, concentration and attention functions are intact and he has normal intellectual capacities. The evidence does not indicate that Mr. Gathright has any severe mental impairment which causes any significant work-related limitations of function. Moreover, although he reports that he has problems with decreased visual acuity and his consultative evaluation found decreased visual acuity bilaterally, his vision examination made findings only for uncorrected visual acuity and there is no indication that Mr. Gathright's vision problems are not ameliorable with corrective lenses. He appears to go about his daily business without undue difficulties due to his vision and is able to play computer chess. Based on all the evidence, and taking into consideration the requirements of Social Security Ruling 88–13, Mr. Gathright has retained a residual functional capacity which supports a full range of sedentary work, and this capacity is not significantly reduced by any mental condition or by his problems with decreased visual acuity.

The fourth step in the sequential evaluation requires a determination whether the claimant could have performed his past relevant work during any time at issue, i.e. whether he retained the residual functional capacity to perform the physical and mental demands of the kind of work he had done in the past. The claimant is deemed to have been unable to perform any category of his past relevant work since the demands of that work (exhibit 9) would have exceeded his residual functional capacity.

Where residual functional capacity is not sufficient to enable an individual to do past relevant work, the burden of proof shifts to the Secretary in the fifth step of the sequence to determine what work, if any, the individual can do, taking into consideration residual functional capacity, age, education and work experience. (20 C.F.R. §§ 404.1561 and 416.961)

Medical–Vocational Guidelines, or rules, are found in Appendix 2 of the Social Security Regulations. Where the findings of fact made with respect to a particular individual's vocational factors (age, education and work experience) and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion whether the individual is or is not disabled. Citation of particular rule(s) will either take notice of jobs which exist in significant numbers throughout the national economy, or the lack thereof. (20 C.F.R. Section 200.00(a), Appendix 2 of Regulations No. 4 and Social Security Ruling 83–11)

Rules 201.21, 201.22, 201.28 and 201.29 of Table No. 1, Appendix 2 apply to an individual: (1) who has been a "younger individual" in age categories 18–44 and 45–49; (2) who has had a high school education; (3) whose past work was semiskilled in nature; (4) who may or may not possess transferable skills; and (5) who has retained a residual functional capacity for sedentary work. Since the claimant's medical-vocational profile matches the above factors, Rules 201.21, 201.22, 201.28 and 201.29 direct a conclusion that he is "not disabled."

Accordingly, the claimant has not been disabled under the standards of the Social Security Act at any pertinent time prior to the date of this decision.

## FINDINGS

After careful consideration of the entire record, the Administrative Law Judge makes the following specific findings:

1. The claimant met the special earnings requirements of the Act on October 22, 1989, the date he alleged he became unable to work, and continues to meet them through at least the date of this decision.

2. The claimant has not engaged in substantial gainful activity since October 22, 1989.

3. The claimant has had the following impairments: bilateral knee osteoarthritis.

4. During times at issue, the severity of the claimant's impairment(s) has not met or equaled a listed impairment as found in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant's testimony of subjective complaints and functional limitations, including pain, was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility.

6. The claimant has had a residual functional capacity for at least sedentary work. Nonexertional factors have not significantly altered this work capacity.

7. During times at issue, the claimant has been unable to perform his past relevant work as a welder, a roofer, a maintenance technician, a carpenter, or a truck driver.

8. The claimant has been a "younger individual" during all times at issue.

9. The claimant has a high school education.

10. Reference to Rule(s) 201.21, 201.22, 201.28 and 201.29, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is not disabled.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

## DECISION

It is the decision of the Administrative Law Judge that, based upon the applications filed on July 24, 1990, and June 20, 1990, the claimant is not entitled to a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act, and is not eligible for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Act.

/s/ Jon D. Boltz
Jon D. Boltz
Administrative Law Judge
OCT 22 1991
Date

## OHA PSYCHIATRIC REVIEW TECHNIQUE FORM

| | |
|---|---|
| Name:  Johnny Earl Gathright | SSN:  585–14–3804 |

| | |
|---|---|
| Assessment is for: | Other:  October 22, 1989 to date of this decision |

| | |
|---|---|
| Administrative Law Judge's Signature | Date |

| | |
|---|---|
| [Signature] | OCT 22 1991 |

I.   MEDICAL SUMMARY

    A.   Medical Disposition(s):       No Medically Determinable Impairment