**James B. TAYLOR, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 85–1383.**

United States District Court, W.D. Pennsylvania.

June 18, 1986.

Samuel S. Blaufeld, Pittsburgh, Pa., for plaintiff.

J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for defendant.

### OPINION

GERALD J. WEBER, District Judge.

This is an action for review of the Secretary's adverse decision on plaintiff's application for disability insurance benefits. 42 U.S.C. § 405(g). Plaintiff has proceeded through all phases of reconsideration and administrative appeal necessary to invoke the court's jurisdiction. In our August 1985 order directing the filing of cross-motions and supporting briefs, we alerted counsel to the fact that failure to file such materials will result in our decision being based on the existing record. On September 12, 1985 we granted defendant's motion for a seven-day enlargement of time within which to file her motion and submit her brief. No documents were filed or submitted to the court. In March 1986 plaintiff's counsel, by letter, requested that the case be decided on the existing record. The letter shows that a copy was sent to counsel for defendant. Defendant has yet to file her motion so we will proceed to decide plaintiff's motion.

Plaintiff is 46 years old. He did not complete high school but he has received a

general equivalency diploma. From 1965 to June 1982 he worked as a fitter for Westinghouse Electric Company, assembling parts for generators used in nuclear power plants. He alleges that hyperthyroidism, muscle pain, fatigability, nervousness, and a mental disorder render him disabled from any employment.

The Administrative Law Judge found that plaintiff could not return to his past relevant work but that he had the capacity to perform sedentary work. The ALJ did not consider plaintiff's testimony about pain and restricted activities credible. The ALJ did recognize that plaintiff has "severe possible myopathy," hyperthyroidism, and a chronic dysthymic disorder.

We must affirm the Secretary if her decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is that evidence adequate to support a conclusion in a reasonable person's mind. We find that the Secretary's decision does not have this support in the record.

The ALJ is bound to consider the whole record in context. He may not be selective in extracting comments from medical reports to minimize the evidence of plaintiff's impairments. In assessing plaintiff's residual functional capacity, the ALJ relied heavily on a form completed by Dr. Michael Hodgson in December 1984. Record at 21. Dr. Hodgson's evaluation is qualified throughout, but the ALJ does not acknowledge this. As to plaintiff's ability to lift, Dr. Hodgson commented: "fluctuating strength: 20 pounds at all times. 20, at least, intermittently." As to standing: "2–3 hours with pauses, long-term uncertain." As to sitting: "2–3 hours with pauses, long-term uncertain." "As to other physical functions: [plaintiff] becomes weak after working; after a first exertion he can do progressively less." Record at 194–195. Even apart from overlooking these qualifying comments, the ALJ's reliance on this form as evidence of plaintiff's capacity even for sedentary work is questionable; if anything, the figures demonstrate the limited amount of time plaintiff can spend sitting or standing. 20 C.F.R.

Part 404.1567(a); *Dobrowolsky v. Califano,* 606 F.2d 403 (3d Cir.1979).

In addition, the ALJ has drawn some inconsistent conclusions in important areas. For example, in discussing plaintiff's pain, the ALJ states that "Despite his subjective complaints, there is no objective evidence which confirms the presence of a debilitating disease process.... the objective findings of a debilitating disease are minimal." Record at 22. This observation is contrary to the medical evidence—for example, the reports of Drs. Richard Stadtmiller, record at 124, 133, 183; Lawrence Kagen, record at 114, 152; Michael Hodgson, record at 156; and psychiatry professor Christopher Ryan, record at 160–65. Nor does it comport with the ALJ's own findings of severe possible myopathy, hyperthyroidism, and chronic dysthymic disorder. Record at 23. In further evaluating plaintiff's complaint's of pain, the ALJ relied on plaintiff's "recitation of activities which include[s] washing dishes, washing clothes, and visiting [which] reflect a residual functional capacity ... compatible with sedentary work activity on a sustained level." Record at 22. This is a plain overstatement. Plaintiff's actual testimony from the hearing consists of the following:

ALJ: Do the dishes?

Plaintiff: Very seldom.

Q. Do you do the laundry?

A. Occasionally I wash a load of clothes....

Q. Do you visit with neighbors, friends, and relatives?

A. Seldom.

Record at 49–50.

Plaintiff's other answers to this line of questioning include the following:

Q. Housework. Do you do any of the cooking?

A. No....

Q. You do any sweeping?

A. No.

Q. Do any mopping?

A. No.

Q. Run the vacuum?

A. No.

Q. Do any shopping for the wife?

A. No.

Q. This past summer did you have a garden?

A. No.

Q. Mow the lawn?

A. No.

Q. Did you do any painting?

A. No, I didn't.

Q. Did you grow any flowers?

A. No, my wife did.

Q. Do you have any pets or animals that you care for?

A. I don't care of them [sic]. We've got three dogs.

Q. When you say you don't care for them, you mean you don't feed them?

A. No, my wife does.

Q. I've got two dogs and I don't care for them but I feed them.

A. Right. I fed them.

Q. Do you have any tool shop or hobby shop that you work in?

A. I have one but I don't work in it.

Q. Your outside activity, do you attend Church?

A. Occasionally.

Q. And I don't care whether you do or not, I'm just trying to get an idea as to your outside activity. Do you visit with neighbors, friends, and relatives?

A. Seldom.

Q. Do you go to movies?

A. No.

Q. Belong to any clubs?

A. No.

Q. You do any fishing?

A. No.

Q. Do any hunting?

A. No.

Q. Do any swimming?

A. No, I don't.

Q. You have any hobbies?

A. Listening to tapes and reading the paper and watching the news, that's not my—

Q. You attend any athletic events? Now you said you watched it on t.v., so you go to any Steelers games?

A. No, I don't. I couldn't take that. I could watch it on television.

Q. Do you do any walking as an outside activity?

A. On a general basis I usually go down and get the mail, that's about the INAUDIBLE

Q. Have you been on vacation in the last year or two?

A. No, I haven't.

Furthermore, the ALJ chose to disregard the opinions of two of plaintiff's treating physicians as to his disability. In October 1984 Dr. Stadtmiller described his knowledge of plaintiff's condition and stated "In summary, Mr. Taylor is disabled from an illness characterized by muscle pain and extreme easy fatigability. There has been no improvement and the long term prognosis for improvement is poor." Record at 183. In December 1984 Dr. Hodgson stated:

In summary, Mr. Taylor has muscle biopsy evidence of myopathy. Such myopathy as has been documented is associated with hypothyroidism of which there is no question that Mr. Taylor suffers. It is uncertain as to when Mr. Taylor will recover full use of his strength. Therefore, it is my opinion that he is, at least temporarily, totally disabled. He may well be able to return to work over the next few years, but only if muscle comlaints cease.

Record at 190.

In addition, a June 1984 neurologic assessment by Christopher Ryan, Ph.D, concludes:

In my opinion, his problems were so severe as to prevent his from [sic] working efficiently. My impression remains the same. While Mr. Taylor is quite intelligent, his personality problems, fine-motor control problems, and abstract-rea-

soning problems are sufficiently severe that he will be quite hampered in carrying out nearly any position which requires mental or motor dexterity. As before, I believe these problems are secondary to his occupational solvent exposure.

Record at 161.

It is granted that plaintiff's physicians have not all reached the same conclusions. The reports above, however, do describe objective findings which support plaintiff's complaints. The ALJ believed that the doctors' opinions of complete disability were inconsistent with objective findings that he could lift up to 20 pounds and sit, stand, or walk for 3 hours. This comparison is not relevant. The operative question is whether plaintiff's condition meets the *Secretary's* definition of disability regardless of how a doctor's opinion is phrased. We conclude that these opinions contain sufficient indicators of reliability to have been accepted by the Secretary.

Certain of plaintiff's infirmities have been established more clearly than others. His thyroid problem, for example, has been recognized by more physicians than the impairments associated with long term exposure to solvents. In the same vein, plaintiff's prior alcoholism has been mentioned as a possible explanation for his muscle damage. Record at 143–45. Plaintiff apparently gave up alcohol in 1973, however, and there is no evidence to the contrary in the record. See, *McShea v. Schweiker,* 700 F.2d 117 (3d Cir.1983).

We believe that the record is fully developed and substantial evidence supports plaintiff's position rather than the Secretary's. We therefore will direct the award of benefits. *Podedworny v. Harris,* 745 F.2d 210 (3d Cir.1984).

### ORDER

Plaintiff's motion for summary judgment is granted. Plaintiff is found eligible for disability insurance benefits in accordance with the application filed March 13, 1984.