NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4103
_____

MICHAEL SANBORN,
                              Appellant

v.

COMMISSIONER OF SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-13-cv-00224)
District Judge: Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 14, 2015
_____

Before: AMBRO, VANASKIE, and SHWARTZ, *Circuit Judges*

(Filed: June 1, 2015)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Michael Sanborn appeals the District Court's order affirming the decision of the Commissioner of Social Security finding Sanborn "not disabled" under the Social Security Act, 42 U.S.C. § 423(d)(2)(c). Because we conclude that the ALJ's decision was "supported by substantial evidence," 42 U.S.C. § 405(g), we will affirm.

I.

Sanborn is a 50-year-old man who was employed as a truck driver from 1987 until January 3, 2007, when he slipped while unloading a truck and felt pain in his shoulder. Initial x-rays and an MRI revealed no significant injuries, but as time progressed, Sanborn found that pain and a limited range of motion prevented him from returning to work as a truck driver. In May 2007, Lisa Bitton, an occupational therapist, performed a residual functional capacity evaluation of Sanborn for Sanborn's employer. Although she agreed that limited mobility precluded Sanborn from resuming his previous occupation, she also concluded that he was capable of light- to medium-duty work in other capacities.

In August 2007, Sanborn had an MRI which revealed moderate cervical spine abnormalities. He was also diagnosed with progressive bilateral carpal tunnel syndrome. After continuing to experience pain in his neck, hands, and wrists, Sanborn sought treatment in early 2008 from Dr. Richard Kaplan, who prescribed a course of acupuncture and eventually concluded that pain, limited mobility, and fatigue rendered Sanborn unfit for employment in any occupation. In June 2008, Sanborn applied for

2

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401–33, for the period beginning January 3, 2007.

In 2008, Sanborn suffered a non-traumatic "mild compression fracture" in his lumbar spine while helping someone move a piano. App. 176. In January 2009, Sanborn was in a car accident, which gave rise to "cervical, thoracic[,] and lumbar strain and sprain." App. 208. The following month, at the request of the Commissioner, Sanborn was examined by Dr. Ira Rubenfeld, an internist, who concluded that Sanborn's impairments precluded him from all employment. Sanborn's record as of February 2009 was then reviewed by Dr. Candelaria Legaspi, a non-examining state agency consultant, who found that Sanborn was capable of light work with occasional light lifting and up to six hours of standing. In March 2009, the Commissioner denied Sanborn's application for benefits. While his appeal of the Commissioner's decision was pending, Sanborn sought additional pain relief from South Philly Pain Management, where he attended regular physical therapy sessions with Kunjan Shah, a physician's assistant.

In September 2009, an ALJ held a hearing at which Sanborn was represented by counsel. The ALJ accepted the clinical findings of Dr. Kaplan, Dr. Rosenfeld, and P.A. Shah, and concluded that from January 3, 2007 to July 2008, Sanborn suffered from two severe impairments, cervical radiculopathy and bilateral carpal tunnel syndrome. The ALJ also recognized that as of July 2008, Sanborn "suffered a mild compression fracture of a vertebra with an additional diagnosis of lower back pain." App. 36. Nonetheless, the ALJ substantially discounted or rejected the opinions of Dr. Kaplan, Dr. Rosenfeld,

3

and P.A. Shah as to Sanborn's residual functional capacity, and instead agreed with the conclusions of Ms. Bitton and Dr. Legaspi that Sanborn remained capable of a limited range of light work. Based on the testimony of a vocational expert (VE), the ALJ found that appropriate jobs existed in significant numbers in the national economy that Sanborn could perform. On that basis the ALJ concluded that Sanborn was not disabled under the Social Security Act, 42 U.S.C. § 423(d)(2)(c).

After exhausting his administrative remedies, Sanborn sought review of the Commissioner's decision in the District Court under 42 U.S.C. § 405(g). The case was referred to a Magistrate Judge, who recommended that the ALJ's decision be affirmed. The District Court overruled Sanborn's objections to the Magistrate Judge's report, adopted the recommendation, and entered judgment in favor of the Commissioner. Sanborn timely appealed.

## II.

The District Court had jurisdiction to review a final administrative decision by the Commissioner under 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291.

We exercise review over the ALJ's decision under the same standard as the District Court. *Burnett v. Comm'r*, 220 F.3d 112, 118 (3d Cir. 2000). The Social Security Act, 42 U.S.C. § 405(g), provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

4

*Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted). Thus, "[w]here the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted).

## III.

"[T]o establish a disability under the Social Security Act, a claimant must demonstrate there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quotation marks omitted). The burden of proof is on the claimant to prove the existence of a disability based on "such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a).

The Commissioner employs a five-step sequential evaluation process to determine if a person is disabled. 20 C.F.R. § 416.920(a)(4). That process requires an ALJ to consider whether the claimant: (1) is engaged in substantial, gainful work activity; (2) has severe medical impairments; (3) has an impairment that meets or equals one of the Social Security Administration's listed impairments; (4) can return to his past relevant work; and, if not, (5) can perform other work consistent with his residual functional capacity. *Id.* Where the claimant satisfies the first four factors, the burden shifts to the Commissioner to show that other jobs exist in substantial numbers in the national economy that the claimant can perform. *Plummer*, 186 F.3d at 428.

In this appeal, Sanborn alleges that the ALJ erred by: (1) rejecting or attributing little weight to certain conclusions of Dr. Kaplan, Dr. Rubenfeld, and P.A. Shah; (2) failing to consider Sanborn's work history for purposes of assessing his credibility; and (3) failing to resolve a discrepancy between the testimony of the VE and the Department of Labor's Directory of Occupational Titles (DOT). None of these arguments warrant relief.

## A.

Sanborn claims that the ALJ erred in step two of her analysis, concerning the existence of a severe medical impairment, by disregarding the conclusions of Dr. Kaplan, Dr. Rubenfeld, and P.A. Shah, and by placing undue weight on the conclusions of Ms. Bitton and Dr. Legaspi. We will address each medical source of evidence in turn, bearing in mind that the opinions of a treating physician are generally entitled to greater weight than the opinions of a non-examining physician, 20 C.F.R. § 404.1527(c)(1), and the opinion of a treating physician's assistant, too, is entitled to some weight as an "other source," SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Although an ALJ is not required to cite every piece of evidence in the record, *see Fargnoli*, 247 F.3d at 42, the ALJ must adequately explain her reasons for rejecting a treating physician's opinion, *see Sykes v. Apfel*, 228 F.3d 259, 266 & n.9 (3d Cir. 2000).

### 1. Dr. Kaplan

Dr. Kaplan is a physiatrist specializing in physical medicine and rehabilitation. Sanborn first sought treatment from him on January 14, 2008, for pain relating to his

work injury of January 3, 2007. Dr. Kaplan reviewed Sanborn's medical records and conducted a physical examination, after which he documented a "mild" restriction in cervical mobility, hamstring tightness, and musculature tenderness. App. 128. During the examination, Sanborn was "able to sit, stand, and walk without obvious limitation." *Id.* Dr. Kaplan initially concluded that Sanborn was "disabled for work *as a truck driver*." App. 129 (emphasis added).

Two weeks later, Dr. Kaplan diagnosed Sanborn with cervical disc disease, herniated nucleus pulposus, carpal tunnel syndrome, and cervical root lesion, and thereafter prescribed a course of acupuncture treatment. App. 134. On February 20, Dr. Kaplan noted that Sanborn was "disabled for employment at this time," though he did not specify whether Sanborn remained disabled only for purposes of his job as a truck driver, or for all purposes. App. 140. On March 5, Dr. Kaplan again observed that Sanborn "sits, stands, and walks without physical limitation," but continued to conclude that Sanborn was "disabled for employment." App. 144. On April 2, Dr. Kaplan stated that "[t]he therapy program has been helpful," but then cited "ongoing pain," "very limited" mobility, and "fatigue" as a basis for concluding that Sanborn "remains disabled for any and all employment at this time." App. 153.

Sanborn argues that the ALJ failed to explicitly consider all aspects of Dr. Kaplan's clinical findings, and then improperly afforded "very little probative weight" to Dr. Kaplan's assessment as to Sanborn's residual functional capacity. App. 39. The record reveals, however, that the ALJ adequately considered Dr. Kaplan's factual

7

findings, noted the areas in which she disagreed with his conclusions, and provided ample explanation for doing so. *See id*. Specifically, the ALJ rejected Dr. Kaplan's final assessment on the grounds that it was "highly inconsistent" with his underlying clinical findings, which included the observation that Sanborn for the previous three months had been sitting, standing, and walking "without physical limitation." *Id.* Dr. Kaplan made no effort to reconcile this finding with his April conclusion that Sanborn was disabled for purposes of "any and all employment." He also failed to explain why Sanborn could not perform even light-duty work. In sum, we see nothing improper in the weight attributed by the ALJ to Dr. Kaplan's conclusory statements regarding Sanborn's disability status.

### 2. Dr. Rubenfeld

Dr. Rubenfeld, an internist, examined Sanborn on February 19, 2009. He observed that Sanborn failed a leg-raising maneuver with his right leg in both the sitting and supine position, displayed a limited range of motion in the cervical and lumbar spine, and "had difficulty getting on and off the table." App. 190–91. He also noted, however, that Sanborn had full grip strength in both hands, retained the capacity to perform fine and dexterous movements, and showed a normal gait.

After the examination, Dr. Rubenfeld filled out a document assessing Sanborn's ability to perform work-related activities. He concluded that Sanborn was limited to the occasional lifting of 2-3 pounds, standing or walking for less than an hour in an 8-hour period, and sitting for at most 10 to 15 minutes at a time. App. 187. He also concluded that Sanborn had limited capacity to push and pull with either upper or lower extremities,

8

and was "never" able to perform bending, kneeling, stooping, crouching, or balancing. App. 187–88. Lastly he found that Sanborn's reaching, handling, and fingering would be affected by his impairments. App. 188. The primary basis for these conclusions was Sanborn's subjective reports of pain and Dr. Rubenfeld's observations regarding Sanborn's limited range of motion.

As with Dr. Kaplan, the ALJ attributed little weight to Dr. Rubenfeld's residual functional capacity assessment because his conclusions were at times inconsistent with his clinical findings as to Sanborn's objective physical impairments. Sanborn responds that Dr. Rubenfeld's conclusions were based in large part on Sanborn's own account of his symptoms, and emphasizes that "pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *6 (July 2, 1996). Here, however, the ALJ had already concluded that Sanborn's subjective testimony as to the "intensity, persistence[,] and limiting effects" of his symptoms was not credible.[1] App. 38. Accordingly, we agree that the ALJ was entitled to discount Dr. Rubenfeld's conclusions to the extent that they were not fully grounded in his own clinical findings or in Sanborn's testimony.

### 3. P.A. Shah

In May 2009, Sanborn began receiving treatment three times a week at South Philly Pain Management, where he was treated by P.A. Shah, whose expertise is in pain

---

[1] We discuss below the basis for that finding, which Sanborn also challenges.

management.  On September 14, 2009, P.A. Shah completed a residual functional capacity assessment and concluded that Sanborn was suffering from chronic pain and limited range of motion, which combined to drastically impair his residual functional capacity.  Specifically, he found that Sanborn could lift less than 10 pounds; could sit, stand, or walk for less than 2 hours in an 8-hour day; and would need unscheduled breaks of 15 minutes every 45 minutes throughout the work day.  In P.A. Shah's view, these impairments precluded Sanborn from employment in any capacity.

Sanborn argues that the ALJ failed to explicitly consider the factors listed in SSR 06-03p, which provides criteria for the evaluation of "an opinion from a medical source who is not an 'acceptable medical source,'" such as a physician's assistant.  2006 WL 2329939, at *5.  He also argues that the ALJ failed to give appropriate weight to P.A. Shah's disability assessment.  But like the Magistrate Judge, we conclude that the ALJ complied with SSR 06-03p, which notes that "[n]ot every factor for weighing opinion evidence will apply in every case." *Id.*  The ALJ reasonably discounted P.A. Shah's opinion based on the absence of support for his penultimate conclusion, observing that P.A. Shah failed to explain how the spinal strain and sprain at issue could have rendered Sanborn unfit for all employment, and because he could not determine whether those conditions would persist for at least 12 months.

4.  Conclusions

Sanborn's ultimate argument on this point is that the record, when viewed as a whole, does not contain substantial evidence to support the ALJ's conclusion that

Sanborn remained capable of light work with a sit/stand option. But, as described above, we conclude that the ALJ was entitled to assign reduced weight to the conclusions of Dr. Kaplan, Dr. Rubenfeld, and P.A. Shah. Beyond that, the record contained substantial evidence that affirmatively supported the ALJ's findings, including residual functional capacity assessments by Ms. Bitton and Dr. Legaspi, both of which were addressed in exacting detail by the ALJ and the Magistrate Judge, and which require no further reiteration here. In sum, Sanborn's challenge to the sufficiency of the evidence provides no basis for relief.

## B.

Sanborn's second argument is that the ALJ failed to explicitly consider his unblemished work history when assessing his credibility. *See Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979) (holding that a claimant's testimony "is entitled to substantial credibility" where the claimant has a lifetime record of continuous work). Sanborn is correct that the ALJ did not explicitly discuss his years of uninterrupted employment. Nonetheless, the ALJ did explain why she found that Sanborn's subjective reports of intense, persistent, and near-completely disabling back pain were belied by other evidence of record:

> [Sanborn] drives, shops, and walks up to 2 blocks at the time of the State agency assessment. He has received various forms of treatment for the alleged symptoms. The record reveals that the treatment has generally been successful in controlling those symptoms. He does not require an assistive device to ambulate. . . . He has not been prescribed narcotic medication for pain. He takes Motrin for pain. . . . Also,

11

> when he re-fractured his back, he was trying to lift a piano,
> which is hardly the conduct of a disabled man.

App. 38. This is consistent with our recognition that "[a]lthough 'any statements of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them," particularly where such statements are undermined by evidence of a more active lifestyle. *Chandler v. Comm'r*, 667 F.3d 356, 363 (3d Cir. 2011) (quoting SSR 96-7p, 1996 WL 374186, at *3). Here, the ALJ's credibility determination was based on a broad view of the record and would have been supported by substantial evidence regardless of whether the ALJ had explicitly considered Sanborn's employment history. We see no basis for relief on this ground.

## C.

Lastly, we address Sanborn's argument that the ALJ erred in failing to question the Government's vocational expert regarding a potential discrepancy between her testimony and the Dictionary of Occupational Titles (DOT). SSR 00-4p provides, in relevant part, that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.

2000 WL 1898704, at *2 (Dec. 4, 2000).  We too have recognized that remand may be appropriate where the ALJ fails to inquire regarding an "explicit" conflict between the VE's testimony and the DOT.  *Jones v. Barnhart*, 364 F.3d 501, 506 n.6 (3d Cir. 2004).

Here, the VE testified that Sanborn was capable of unskilled light work with a sit/stand option.  Sanborn argues that the ALJ should have inquired as to whether that opinion conflicted with the DOT.  In support of that argument, Sanborn cites SSR 83–12, 1983 WL 31253 (Jan. 1, 1983), which provides that a person who is limited to alternate sitting and standing is "not functionally capable" of the prolonged sitting or standing needed for most light work.  *Id.* at *4.  The DOT, however, does not include sit/stand options in job descriptions.  *See, e.g.*, *Conn v. Astrue*, 852 F. Supp. 2d 517, 523 (D. Del. 2012).  Accordingly, the ALJ did not erroneously fail to inquire into an explicit conflict between the VE's testimony and the DOT.

IV.

For the forgoing reasons, we will affirm.