**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1341
_____

DOROTHEA SUDLER,
                                        Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(No. 2:18-cv-05064)
District Judge:  Hon. Jeffrey L. Schmehl
_____

Submitted Under Third Circuit LAR 34.1(a)
September 29, 2020
_____

Before: SHWARTZ, PHIPPS, and SCIRICA, <u>Circuit Judges</u>.

Filed:  October 1, 2020

_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Dorothea Sudler appeals an order of the District Court affirming the decision of an Administrative Law Judge ("ALJ") that denied her applications for disability insurance benefits ("DIB") and supplemental social security income ("SSI"). For the reasons set forth herein, we will affirm.

I

Sudler suffers from persistent lower back pain, and in 2014 applied for DIB and SSI benefits. The medical reports regarding Sudler's back pain and her relative physical abilities indicate that: (1) throughout 2014, Sudler had "normal gait," "normal range of motion," "no edema," and "no tenderness," AR 328, 345; and her lumbar spine x-rays were described as "unremarkable," AR 350; (2) in 2015, an MRI showed only "minimal" and "unchanged" irregularities, AR 562, and her physician observed that she had a normal gait, experienced "no acute distress" under physical examination, was able to "walk on [her] heels and toes without much difficulty," could "squat 70% full," and did not need an assistance device for ambulation, AR 459; (3) in 2016, Sudler underwent "medial branch nerve diagnostic" and steroid injections, AR 502; and (4) in 2017, Sudler was provided with "mindfulness resources" and was referred for a "pain psychology consultation," AR 525. During these periods, Sudler was prescribed medication for her pain, but she testified that while it made her "comfortable," it also made her "sleepy," "sick," and "like . . . a zombie." AR 53-54. Physicians also repeatedly encouraged Sudler to participate in regular physical therapy, but she did not consistently do so. Regarding Sudler's specific physical limitations, one physician in 2014 opined that Sudler could not lift, pull, push, or carry greater than twenty-five pounds. Another

2

physician in 2015 reported that Sudler could occasionally lift and carry up to ten pounds and could frequently use her hands to reach, handle, and push/pull. The same physician, however, reported that Sudler appeared to be in no acute distress and had a good prognosis.[1]

In addition to the medical evidence, the ALJ considered the testimony of a vocational expert. The vocational expert testified that a hypothetical claimant with Sudler's limitations[2] would not be able to physically perform Sudler's previous work but could perform other light, unskilled jobs. The expert then identified specific jobs in the national economy potentially available to an individual with physical limitations like those of Sudler.

The ALJ considered the evidence and applied the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920,[3] and determined that (1) Sudler had not engaged in substantial gainful activity or employment since 2016; (2)

---

[1] Sudler described her daily activities as remaining at home, except to visit the doctor and her mother, and further testified that her husband does the cleaning and shopping. The ALJ declined the offer to hear Sudler's husband's testimony about her activities at home because the ALJ accepted her testimony on that subject.

[2] The limitations the ALJ posed to the vocational expert involved whether a claimant of Sudler's age, education, and past work experience could perform a range of light work with occasional stooping, crouching, crawling, kneeling, and climbing ramps and stairs, but no ladders, ropes, or scaffolds and with no exposure to extreme cold, wetness, or vibration.

[3] Under this five-step process, the ALJ must determine whether a claimant (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3) has an impairment that would render her per se disabled under the listings; (4) retains "residual functional capability" to perform past work; and (5) can perform any other work considering her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Sudler suffered from lumbosacral degenerative disc disease; (3) the impairment did not meet Listing 1.04 (Disorders of the Spine) as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, because neither her nerve root nor her spinal cord were compromised; (4) Sudler's residual functional capacity ("RFC") allowed her to perform light work, subject to certain postural and environmental limitations,[4] because her condition was mild, she was not participating in physical therapy, she did not require back surgery, and she could move effectively without a hand-held assistance device; and (5) although she could not perform her past relevant work as a janitor, housecleaner, or housekeeping dayworker, based on the vocational expert's testimony, Sudler could perform other jobs available in the national economy. On this basis, the ALJ found that Sudler was "not disabled." AR 36. Sudler appeals.

## II[5]

We exercise plenary review over an ALJ's determination of legal issues, Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011), and review the factual findings and final determination under the deferential "substantial evidence" standard, 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). The substantial evidence threshold is not high, Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019), and includes "such relevant evidence as a reasonable mind might accept as

---

[4] Specifically, the ALJ found that Sudler could perform light work "except occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs; never climb ladders, ropes, and scaffolds; and no exposure to extreme cold, wetness, or vibration." AR 29.
[5] The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g). We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

adequate to support a conclusion." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Id. (internal quotation marks and citation omitted). If, upon review of the record as a whole, Schaudeck, 181 F.3d at 431, we determine that the ALJ's findings are supported by substantial evidence, we are bound by those findings even if we would have decided the case differently, Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

III

The ALJ found that Sudler's back pain constituted a severe impairment that limited her RFC to performing light work,[6] subject to certain restrictions. A claimant's RFC is the most work he or she can still do despite the relevant physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).[7] A claimant's RFC should adequately reflect his or her "credibly established limitations," especially when later used as the basis for a vocational expert hypothetical. Rutherford, 399 F.3d at 554 (citation omitted) (emphasis omitted).

_____

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[7] An ALJ's assessment of a claimant's RFC is governed by SSR 96-8P, 1996 WL 374184.

Substantial evidence supports the ALJ's RFC determination. The ALJ described Sudler's RFC as follows: "claimant [can] perform light work . . . except occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs; never climb ladders, ropes, or scaffolds; and no exposure to extreme cold, wetness, or vibration." AR 29. The evidence shows that Sudler had "normal gait," "[n]ormal range of motion," "no edema," and "no tenderness," AR 328, 345; her x-rays were "unremarkable," AR 350; and her MRIs displayed only minimal irregularities. Moreover, one medical report noted that Sudler demonstrated "[i]nconsistent and non-anatomical sensory deficits" and "[o]verreaction during testing." AR 491.

The ALJ also considered Sudler's testimony about her pain. An ALJ must carefully consider a claimant's statements about her symptoms, SSR 16-3p; Reefer v. Barnhart, 326 F.3d. 376, 381 (3d Cir. 2003), but "the ALJ is not required to credit them." Chandler, 667 F.3d at 363 (citing 20 C.F.R. § 404.1529(a)). Substantial evidence supports the ALJ's finding that Sudler's "impairment could reasonably [have been] expected to cause some of the alleged symptoms [but that her] statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 30. For instance, despite her complaints of constant back pain, Sudler underwent relatively routine and conservative treatment, such as injections, and pain psychology management, but she was not taking medication of any kind (including over-the-counter medication) to address her pain as of the date of the hearing, and she did not complete physical therapy. See Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 119 (3d Cir.

6

1995) ("[A] patient's failure consistently to use prescribed pain medication may undermine the patient's claims of debilitating pain . . . ." (citation omitted)); Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986) (noting that claimant's decision to cease taking pain medication that made him feel "tired and depressed" indicated that while his "pain may be constant and uncomfortable, it is not disabling or severe"). Thus, Sudler's modest treatment plan and her failure to comply with recommended pain management techniques provide substantial evidence for the ALJ's decision to not fully credit Sudler's testimony about the extent of her pain.

Even crediting Sudler's back pain complaint, substantial evidence supports the ALJ's determination that Sudler's RFC allowed her to perform light work.[8] Among other things, Sudler's treating physicians assigned no significant long-term limitations due to her back pain. In addition, the ALJ had a basis to reject the limitations certain doctors placed on Sudler's capacity to lift. For instance, one report dates back to 2010, many years before the alleged 2016 onset date. Another report stating Sudler could lift no more than ten pounds also stated that Sudler did not appear to have "acute distress," needed no "assistive devices" or help getting on the examination table, and had a good prognosis— descriptions that are inconsistent with a ten-pound limitation.[9]

---

[8] Sudler contends that given her status as "closely approaching advanced age," 20 C.F.R. § 404.1563(d), she would be disabled under the Medical Vocational Guidelines Grid if she was only able to perform sedentary work rather than light work. This argument is immaterial, however, because the ALJ's determination that Sudler could perform light work was supported by substantial evidence.

[9] Additionally, the fact that Sudler has received pain treatment is not dispositive on the question of disability. Rather, a claimant may suffer from serious pain without being "disabled" under the Social Security Act if she is still able to work.

Because the ALJ's RFC determination is supported by the evidence, we next examine whether there is substantial evidence to show that Sudler's RFC did not preclude her from working. On this point, the vocational expert testified about jobs available for a hypothetical person with Sudler's age, education, work experience, RFC, and other credibly established limitations.[10] See Rutherford, 399 F.3d at 554 (citation omitted). The vocational expert testified that there were jobs available for a hypothetical person with Sudler's limitations. Based upon this testimony, the ALJ properly found that Sudler could work and thus was not disabled under the Social Security Act.

The ALJ's decision was well-reasoned and thoroughly discussed the medical evidence, the vocational expert's testimony, and Sudler's testimony about her pain, her daily activities, and her ability to work. The ALJ also explained why she found Sudler overstated her complaints, given her decision to forego even over-the-counter pain medication and her refusal to regularly attend physical therapy. The ALJ also explained why she gave certain medical reports little weight. See Chandler, 667 F.3d at 362 (noting that to ensure meaningful review an ALJ must explain "the weight given to physician opinions and the degree to which a claimant's testimony is credited" (citations omitted)); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("[A]n examiner's findings should be as comprehensive and analytical as feasible . . . so that a reviewing court may know the basis for the decision." (citation omitted)). Thus, the ALJ fully explained the basis for

_____

[10] The ALJ's proposed hypothetical did not mention Sudler's testimony that her pain medication made her sleepy and like a "zombie." This fact was irrelevant, however, because Sudler stopped taking the medication and declined to pursue other treatment, such as physical therapy, when the expert was asked to provide the opinion.

her decision.[11]

IV

For the foregoing reasons, we will affirm the order of the District Court.

---

[11] Sudler relies on Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981) and Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979), to argue that the ALJ's decision was not well-reasoned. These cases, however, are distinguishable. The ALJs in both cases ignored certain evidence and failed to explain why they rejected or discounted other evidence. Here, the ALJ explicitly grappled with hundreds of pages of medical records spanning nearly a decade and provided reasons for why the evidence led to her conclusion.